IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GLORIDELFA BARRIOS and all others
similarly situated under 29 U.S.C. 216(b),

        Plaintiff,                        Case No.: 17-CV-20186-JEM

vs.

SOLASI ACCOUNTING & TAX ADVICE &
DESIGN OF THE WORDS IN DARK BLUE
AT LEFT SIDE HAS A CIRCLE COLORED
BLUE, PURPLE AND GREEN LIGHT a/k/a
SOLASI, LACAYO TRADE GROUP, INC.,
SOPHIA LACAYO,

        Defendants.
_____/

## <u>DEFENDANTS' NOTICE OF AUTHORITY</u>

The Defendants, by and through their undersigned counsel, hereby file their Notice of

Authority for the discovery hearing set for October 27, 2017 including the following case law

with relevant portions highlighted:

1.    *Int'l Aerospace Group Corp. v. Evans Meridians Ltd.*, 16-24997-CIV, 2017 WL

1927957 (S.D. Fla. May 10, 2017).

2.    *Chavez v. Arancedo*, 17-20003-CIV, 2017 WL 3394614 (S.D. Fla. Aug. 8, 2017).

3.    *Bonet v. Now Courier, Inc.*, 203 F. Supp. 3d 1195 (S.D. Fla. 2016).

Dated: October 27, 2017.

                    RICHARDS GOLDSTEIN LLP
                    *Attorneys for Solasi Accounting & Tax Advice*
                    *& Design of the Words in Dark Blue at Left Side*
                    *has a Circle Colored Blue, Purple and Green*
                    *Light a/k/a Solasi, Lacayo Trade Group, Inc.,*
                    *and Sophia Lacayao*
                    55 Miracle Mile, Suite 310

Coral Gables, Florida 33134
Telephone:  (305) 448-2228
Facsimile:   (305) 448-2229
Primary E-mail:  rrichards@rgattorneys.com
Secondary E-mail: jgoldstein@rgattorneys.com

By: s/Joshua Saval
RICHARD L. RICHARDS
Florida Bar No. 09415
JASON GOLDSTEIN
Florida Bar No.: 91113
JOSHUA SAVAL
Florida Bar No.: 112165

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, the foregoing document was electronically filed

with the Clerk of the Court using CM/ECF and served upon all counsel of record on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are not

authorized to receive electronically Notices of Electronic Filing.

By: s/Joshua Saval
JOSHUA SAVAL

## SERVICE LIST

J.H. ZIDELL, P.A.
*Attorneys for Gloridelfa Barrios*
J.H. Zidell, Esq.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
zabogado@aol.com

2

2017 WL 1927957
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

INTERNATIONAL AEROSPACE
GROUP CORP., Plaintiff,
v.
EVANS MERIDIANS LTD.,
Defendant/Counter-Plaintiff.

Case No. 16-24997-Civ-KING/TORRES
|
Signed 05/10/2017

**Attorneys and Law Firms**

Jason Goldstein, Richard L. Richards, Peter Joseph Lewis, Richards Goldstein LLP, Joshua A. Saval, Richards and Associates, Coral Gables, FL, for Plaintiff.

Marshall Dore Louis, Sinclair Louis & Zavertnik, P.A., Miami, FL, for Defendant/Counter-Plaintiff.

**ORDER ON DEFENDANT'S
MOTION TO COMPEL**

EDWIN G. TORRES, United States Magistrate Judge

**\*1** This matter is before the Court on Evans Meridians Ltd.'s ("Defendant") Motion to Compel ("Motion") [D.E. 20] complete answers to interrogatories against International Aerospace Group Corp. ("Plaintiff"). Plaintiff responded to Defendant's Motion on May 2, 2017. [D.E. 22]. Therefore, this Motion is now ripe for disposition. After careful consideration of the Motion, response, and relevant authority, and for the reasons discussed below, Defendant's Motion is **GRANTED in PART** and **DENIED in part**. [1]

### I. BACKGROUND

This lawsuit was originally filed on December 1, 2016 [D.E. 1] and arises from the parties' attempt to complete a transaction for the sale of seven large jet engines. [2] The authenticity and formation of the contracts is undisputed. The only genuine disputes involve the parties' performance under the contract and the damages resulting therefrom. Both Plaintiffs' Complaint and the Counterclaims asserted by Defendant focus on the liabilities and remedies available due to three of the engines not being delivered by Plaintiff (who still has possession of the engines) to Defendant. Plaintiff claims that Defendant owes a balance on the transaction [D.E. 1-1 at ¶¶ 12, 23], while Defendant asserts that it paid the balance in full. Defendant further claims that Plaintiff failed to deliver the three engines [D.E. 7 at ¶¶ 86, 94], and, after delivery was not accomplished within 45 days of the required date, Defendant cancelled the contracts and demanded a refund. [D.E. 7 at ¶¶ 68-71, 79-82, 87, 95]. As it relates to Plaintiff's claim against Defendant for breach of contract, Defendant contends that Plaintiff had a duty to mitigate damages once the contracts were purportedly breached, and that Plaintiff is responsible for any diminished value of the engines from the date it claims that the contracts were breached. [D.E. 7 at ¶¶ 48-49].

On March 17, 2017, Defendant served Plaintiff its First Set of Interrogatories. After multiple extensions, and after the parties worked through disputes as to Plaintiff's initial responses, Plaintiff served its Amended Response to the First Set of Interrogatories on March 17, 2017. Because the Amended Response was allegedly deficient for several reasons, Defendant filed its Motion to Compel on April 19, 2017. [D.E. 20].

### II. APPLICABLE PRINCIPLES AND LAW

Under the Federal Rules, a party may pose interrogatories related to any matter into which Rule 26(b) allows inquiry, FED. R. CIV. P. 33(a)(2), request the production of any documents that fall within the scope of Rule 26(b), FED. R. CIV. P. 34(a), and serve requests to admit certain matters within the scope of Rule 26(b)(1), FED. R. CIV. P. 36(a)(1). Rule 26(b) also allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at \*2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary 6* (2015)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC,* 2016 WL 1408098, at \*2 (M.D. Fla. Apr. 11, 2016). If

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

the opposing party objects to interrogatories or requests, the requesting party may then file a motion to compel production pursuant to FED. R. CIV. P. 37, but only after its counsel, in good faith, confers with opposing counsel to resolve discovery disputes without court intervention. *See* FED. R. CIV. P. 37(a)(1).

**\*2** The Federal Rules afford the Court broad authority to control the scope of discovery, *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1307 (11th Cir. 2011), but "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.3d 1545, 1547 (11th Cir. 1985). Courts must consequently employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these rules. *See Rosenbaum v. Becker & Poliakoff, P.A.,* 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases). The "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *State Nat'l Ins. Co. v. City of Destin,* 2015 WL 11109379, at *1 (N.D. Fla. Sept. 1, 2015).

However, while the scope of discovery is broad, it is not without limits. *See Washington v. Brown & Williamson Tobacco,* 959 F. 2d 1566, 1570 (11th Cir. 1992); *Rossbach v. Rundle,* 128 F. Supp. 2d 1348 (S.D. Fla. 2000) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)). To show that the requested discovery is otherwise objectionable, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *See Rossbach*, 128 F. Supp. 3d at 1354 (citing in part *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir. 1985)).

Boilerplate objections and generalized responses are improper. *See Alhassid v. Bank of America,* 2015 WL 1120273, at *2 (S.D. Fla. March 12, 2015). This District has frequently held that objections which fail to sufficiently specify the grounds on which they are based are improper and without merit. *See, e.g., Taylor v. Bradshaw,* 2014 WL 6459978 (S.D. Fla. Nov. 14, 2014); *Abdin v. Am. Sec. Ins. Co.,* 2010 WL 1257702 (S.D. Fla. March 29, 2010). More specifically, objections simply stating that a request is "overly broad, or unduly burdensome" are meaningless and without merit. *Abdin,*

2010 WL 1257702 at *1 (quoting *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008)).

In addition to the Federal Rules, Southern District Local Rule 26.1 controls the necessary procedure a party must follow when objecting to a request for production or asserting a claim of privilege. It requires that:

> All motions related to discovery, including ... motions to compel discovery ... shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, *may* constitute a waiver of the relief.

S.D. Fla. L.R. 26.1(i)(1) (emphasis added). On its face, Rule 26.1(i) is therefore plainly discretionary. While the "occurrence" of grounds for a motion tends to be the moment at which responses are filed, this is not always necessarily the case. *See, e.g.*, *Socas v. Northwestern Mut. Life Ins.*, 2008 WL 619322 (S.D. Fla. March 4, 2008) (finding that the "occurrence" triggering the motion to compel was when the requesting party examined certain documents months after their initial requests had been answered); *United States v. Polo Pointe Way, Delray Beach, Fl.*, 444 F. Supp. 2d 1258, 1261 (S.D. Fla. 2006) (finding that the "occurrence" at issue was a deposition that took place after responses were filed).

In pertinent part, the Local Rules also provide that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.*" S.D. Fla. L.R. 26.1(g)(3)(C) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any ... production demand ... and an answer is not provided on the basis of such assertion ... [t]he attorney asserting the privilege shall ... identify the nature of the privilege ... being claimed." S.D. Fla. L.R. 26.1(g)(3)(B)(I).

### III. ANALYSIS

**\*3** Defendant's Motion seeks to compel Plaintiff to provide better responses to Defendant's first set of interrogatories. Plaintiff takes issue with Defendant's Motion because it purportedly seeks to impose obligations on Plaintiff that are outside the boundaries of the Federal Rules of Civil Procedure. Plaintiff further contends that, had Defendant performed even a cursory review of the documents Plaintiff identified, then Defendant's Motion would not have been filed.

The primary issue throughout many of the interrogatories at issue is that Plaintiff relies on Federal Rule of Civil Procedure 33(d) as an exception to the completeness requirement in responding to Defendant's interrogatories. [3] Rule 33(d) was first enacted in 1970 with the purpose to shift the time and cost burden of perusing documents from the producing party to the party seeking the information. *See* Minter v. Wells Fargo Bank, N.A., 286 F.R.D. 273, 277 (D. Md. 2012) ("The Rule serves to put the burden of extracting and collating the information on the party seeking it in cases in which it would be time-consuming and expensive to extract data from the records.") (citation and quotation marks omitted).

In filing a motion to compel, the party seeking discovery "must make a prima facie showing that the use of Rule 33(d) is somehow inadequate to the task of answering the discovery, whether because the information is not fully contained in the documents, is too difficult to extract, or other such reasons." U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002). After a prima facie case has been made, the burden shifts to the producing party to justify the use of Rule 33(d).

In order "for Rule 33(d) to apply, the burden of ascertaining the answer from the documents at issue must be substantially the same for either party. When one party is substantially more familiar with the documents at issue than the other, the burden will generally not be the same." *Id.* (citing T.N. Taube Corp. v. Marine Midland Mortg. Corp., 136 F.R.D. 449, 454 (W.D.N.C. 1991) ("An important—often key—factor in weighing the respective burdens on the parties is the interrogated party's familiarity with its own documents.")); *see also* Reliance Ins. Co. v. Core Carriers, Inc., 2008 WL 2414041, at \*3 (M.D. Fla. June 11, 2008) (determining that Rule 33(d) "allows a party to respond to an interrogatory by identifying business records from which the answer to the interrogatory may be derived so long as 'the burden of deriving or ascertaining the answer will be substantially the same for' " either party.) (citing FED. R. CIV. P. 33(d)). "Reliance on Rule 33(d) is appropriate when the interrogatory requests objective facts that are obvious from the specified documents, but is generally inappropriate when the interrogatory asks a party to state its contentions or to state facts supporting its allegations." Morock v. Chautauqua Airlines, 2007 WL 4247767, \*2 (M.D. Fla. Dec. 3, 2007).

**\*4** "The producing party must satisfy a number of factors in order to meet its justification burden. First, it must show that a review of the documents will actually reveal answers to the interrogatories." Elfindepan, S.A., 206 F.R.D. at 576. This means that the producing party must explain that the named documents contain all of the information requested. Second, the producing party must precisely specify for each interrogatory "the actual documents where [the] information will be found." *Id.* (citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2178, at 336 (2d ed. 1994)). Because Plaintiff purportedly complied with Rule 33(d), Plaintiff argues that Defendant's Motion has no merit and should be denied. We will discuss the parties' arguments in turn.

### A. *Interrogatory 1*

Defendant first seeks to compel Plaintiff to provide a better answer to interrogatory 1. Specifically, interrogatory 1 requests Plaintiff to "[i]dentify every payment by date, check or wire number, source, and amount received by you, from or on behalf of Evans, in connection with the sale of any and all aircraft engines to Evans by you, from January 1, 2012 to the present date." [D.E. 20]. Defendant argues that Plaintiff's discovery response is inadequate because it merely contains boilerplate objections that fail to articulate why the request is overboard or seeking irrelevant information. Although only three engines are at issue in this litigation, Defendant suggests that the contracts for those engines involve the sale of four additional engines. The payments and contracts purportedly overlap, and in order to prove that Plaintiff did receive the funds owed on the three engines (which Plaintiff allegedly disputes), Defendant claims that it must obtain proof of the sums paid under both contracts. This is why interrogatory 1 includes a

broader time period for responsive information other than the 2013 contract for the three engines at issue. Relatedly, Plaintiff's privilege log identifies 2013 bank records being withheld, but allegedly does not identify whether any records were withheld for the years 2012, 2014, 2015, 2016, and 2017. For these reasons, Defendant argues that Plaintiff must provide a better response to interrogatory 1 and provide a clarifying statement as to whether any responsive documents (other than 2013 materials) were withheld.

Plaintiff's response is that interrogatory 1 is vastly overbroad because it seeks information outside the relevant time period. More specifically, Plaintiff argues that interrogatory 1 seeks the discovery of financial information relating to transactions almost eighteen months before the execution of the contracts at issue. Nonetheless, in an effort to comply with interrogatory 1, Plaintiff produced highlighted bank records from October 1, 2013 through December 31, 2013. As for Defendant's argument that Plaintiff did not specify anything about the redacted bank records, Plaintiff argues that the documents produced amount to no more than twenty-five pages of records. As such, Plaintiff believes that the burden is extraordinarily light for the Defendant to locate the relevant information and that Defendant's Motion should be denied.

Plaintiff's response is well taken. Based on a thorough review of Plaintiff's amended responses to Defendant's interrogatories, the Court finds that the level of detail provided is specific enough to pass muster under Rule 33(d). *See, e.g.*, *LeBlanc v. Unifund CCR Partners, G.P.*, 2007 WL 2446900, at *2 (M.D. Fla. Aug. 23, 2007) ("As requested by the interrogatory and consistent with this rule, the Plaintiff should identify specific documents that are responsive to the interrogatory."). Plaintiff adequately explained in its response that the bank records relate specifically to the engines at issue and that they reflect the date, check or wire number, source, and amount received. In other words, the response identifies where to find the information requested. Plaintiff also redacted the bank records (to presumably remove extraneous information) and highlighted them to assist the Defendant in locating the relevant information. Because Plaintiff provided a specific level of detail about the bank records in its discovery response, redacted the documents, and took the additional step of highlighting them for the Defendant, there is practically nothing more that Plaintiff could

have done to comply with Rule 33(d). To this extent, Defendant's Motion is **DENIED**. [4]

### B. *Interrogatory 2*

**\*5** As for interrogatory 2, Defendant seeks to compel Plaintiff to provide an amended answer and "[i]dentify what each payment identified in Interrogatory 1 was for, and detail which contract or invoice it related to." [D.E. 20]. Defendant argues that Plaintiff's objections are boilerplate and the limited records identified do not properly respond to the discovery request nor allow Defendant to match payments to specific contracts. Furthermore, Defendant suggests that two documents identified on Plaintiff's privilege log appear relevant to interrogatory 2 and should be produced.

Plaintiff's response is that Defendant is attempting to create unnecessary work. Plaintiff contends that the bank records produced show a date, amount, and reference number and that Defendant can simply cross reference these records with its own. As for the documents identified on Plaintiff's privilege log, Plaintiff notes that the materials are confidential commercial documents that cannot be produced because their disclosure would purposely lead to irreparable harm. More specifically, the privileged documents relate to Plaintiff's operations, financial health, and internal procedures.

Defendant's argument is, in part, persuasive because Plaintiff's discovery response fails to comply with Rule 33(d). Plaintiff's response merely indicates that it produced redacted bank records. The bank records themselves do not allow the Defendant to determine what each payment was for and its relationship to a contract or invoice. Many courts have found that vague references to documents do not suffice under Rule 33(d) in connection with a broad and detailed discovery request. *See Capacchione v. Charlotte–Mecklenburg Schools*, 182 F.R.D. 486 (W.D.N.C. 1998); *In re Bilzerian*, 190 B.R. 964 (Bankr. M.D. Fla. 1995). While Plaintiff suggests that locating an answer for interrogatory 2 is easier if Defendant cross-referenced the relevant documents, it is Plaintiff's discovery response that needs more detail to be in compliance with Rule 33(d). *See Brown v. Blue Cross & Blue Shield of Alabama*, 2014 WL 3519100, at *4 (W.D.N.C. July 15, 2014) ("A party seeking to utilize Rule 33(d) must specify for each interrogatory the documents that 'will actually reveal answers to the interrogatories."

') (citing *Elfindepan, S.A.*, 206 F.R.D. at 576). To this extent, Defendant's Motion to compel a better answer to interrogatory 2 is **GRANTED**. As for Defendant's request for Plaintiff to produce two documents on Plaintiff's privilege log, Defendant provides no basis to support the relief requested and Defendant's Motion on this basis is **DENIED**.

### C. *Interrogatory 3*

Next, Defendant seeks an amended answer to interrogatory 3. Specifically, interrogatory 3 states the following:

> For each of [the] engines 517538, 530167, and 690352, specify by date, amount, source of payment, and your account these payments were deposited into, each payment received by you from or on behalf of Evans, in connection with the sale of those three engines.

[D.E. 20]. Plaintiff claims that it fully complied with interrogatory 3 and produced documents/redacted bank records reflecting the date, check or wire number, source, and amount received by Plaintiff on behalf of Defendant within the relevant time period related to the engines in the discovery request. As such, Plaintiff contends that it identified and produced the responsive bank records—totaling fewer than twenty five pages—with dates, check or wire numbers, sources, and amounts displayed on their face. Because these documents purportedly provide the information responsive to Defendant's interrogatory, Plaintiff argues that it has met its discovery obligations and that Defendant's Motion should be denied.

**\*6** Defendant takes issue with Plaintiff's response because Plaintiff has allegedly failed to identify specific records as requested and the records produced appear to be limited in nature. But, Defendant's argument is unconvincing because, similar to interrogatory 1, the response specifically indicates that the redacted bank records provide all of the information requested and relate directly to the three engines in question. For these reasons, Defendant's Motion, as it relates to interrogatory 3 is **DENIED**.

### D. *Interrogatory 4*

Pursuant to Defendant's interrogatory 4 that requests Plaintiff to "[s]pecify and describe all efforts made by you and each date that effort occurred on, to deliver engines 517538, 530167 and 690352 to Evans," [D.E. 20] Defendant contends that Plaintiff's discovery response contains improper boilerplate objections. Defendant also takes issue with the fact that Plaintiff has not complied with Rule 33(d) because Plaintiff allegedly failed to identify which documents are responsive to the interrogatory.

In response, Plaintiff argues that Defendant's interrogatory is facially overboard and intrudes upon confidential information. Notwithstanding those objections, Plaintiff argues that it produced documents reflecting all of its efforts to deliver the three jet engines to Defendant including: Air Waybills, correspondence, shipment information, and invoices for the cost of transportation. As such, Plaintiff suggests the significance of these documents is facially apparent and requiring a written response by Plaintiff would constitute duplicative work.

The Court agrees that Plaintiff's response to interrogatory 4 is inadequate. By relying solely on the documents produced, Plaintiff attempts again to skirt around Rule 33(d). Plaintiff's response to interrogatory 5 does not even explain generically the type of documents produced other than they are responsive to the discovery request. Accordingly, as to Defendant's interrogatory 4, Defendant's Motion is **GRANTED**. *See, e.g.*, *Unlimited Res. Inc. v. Deployed Res., LLC*, 2009 WL 1370778, at *3 (M.D. Fla. May 13, 2009) (finding that a party failed to provide "sufficient detail to enable [the opposing party] to locate the responsive documents").

### E. *Interrogatory 5*

Pursuant to Defendant's interrogatory 5 that requests Plaintiff to "[s]pecify and describe by date and actin taken, all efforts made by you to mitigate the damages you claim to have incurred in relation to the attempted sale of engines 517538, 530167, and 690352," [D.E. 20] Defendant contends that Plaintiff has failed to identify a single document that answers this discovery request. In addition, Defendant believes that there are a number of entries in the privilege log that Plaintiff identifies specifically as relating to the mitigation of damages. Although these documents may fall within a privilege, the "date and action taken" or the "efforts made" by Plaintiff

to mitigate its claimed damages allegedly do not meet that criteria. Therefore, Defendant argues that Plaintiff should be compelled to answer this interrogatory and specify its attempts to mitigate damages.

Plaintiff argues in response that it identified and produced documents reflecting its efforts to mitigate damages including via Air Waybills, correspondence, shipment information, and invoices for the cost of transportation. As such, Plaintiff suggests that it has met its burden of identifying and producing documents that, on their face, answer the interrogatory. Yet, Plaintiff's interrogatory response fails for the same reasons as articulated in interrogatory 4. There is nothing in the response that identifies the records in sufficient detail to enable the Defendant to locate and identify the responsive information. Moreover, the response calls for a more comprehensive showing of Plaintiff's efforts to mitigate damages than what the documents themselves could show. Accordingly, Defendant's Motion, as it relates to interrogatory 5, is **GRANTED**. [5]

### F. *Interrogatories 6 and 7*

 **\*7**  In response to Defendant's interrogatories 6 and 7 that request Plaintiff to specify the fair market value of the three engines (including the location of the jet engines), Plaintiff contends that the interrogatories are seeking speculative information. More specifically, Plaintiff argues that the term "fair market value" is undefined in the discovery request and subject to many interpretations. Plaintiff points out that Defendant did not provide any geographical scope or limitation in the interrogatories, rendering an educated response impossible. Given the inherent variances in different markets, Plaintiff suggests that it should not be compelled to answer these interrogatories until it has retained an expert. As such, Plaintiff requests an extension to answer these interrogatories until it has retained an expert who can properly respond with accurate information.

Defendant disputes the fact that Plaintiff cannot answer any part of the interrogatories. For example, Defendant notes that part of interrogatory 6 seeks information on the current location of each jet engine and that the information requested obviously does not approach a legal conclusion, privileged information, or the domain of an expert. Defendant also suggests that it would be acceptable for Plaintiff to answer the remainder of

interrogatories 6 and 7 at a later date if the information is not currently known at this time.

Defendant's position is, in part, well taken. Plaintiff has not explained how the location of each jet engine requires the use of an expert, or how that information is any way speculative or privileged. Therefore, Defendant's Motion is **GRANTED** to the extent that Plaintiff is compelled to provide a complete response to interrogatory 6 on the current location of the jet engines. As for the remainder of interrogatories 6 and 7, Defendant's Motion is **GRANTED in PART** because Plaintiff has not properly explained why it cannot provide a lay opinion of the fair market value of the jet engines at this time. While it is persuasive that an expert can provide a more accurate/detailed analysis of the information requested, Plaintiff can certainly answer the interrogatories now and supplement its response at a later date. *See* FED. R. CIV. P. 26(e). And, in supplementing a response at a later time, the parties are directed to work cooperatively to determine the most appropriate definition of "fair market value" to conserve judicial resources and avoid any future discovery dispute on this issue. In other words, Plaintiff should communicate with Defendant to the extent that there are any lingering questions on the information requested.

### G. *Interrogatory 9*

Pursuant to interrogatory 9 that requests Plaintiff to "[s]pecify by payee, date, amount and check or write number, each payment made by you to store, maintain, preserve, transport, or for any expense which you are otherwise claiming an entitlement to [sic] from Evans as damages, for engines 517538, 530167, and 690352," [D.E. 20] Defendant contends that Plaintiff's objections are boilerplate and insufficient. Specifically, Defendant argues that Plaintiff's assertion that the interrogatory seeks information not pertinent or relevant to the case is absurd. Defendant also alleges that Plaintiff has failed to specify which documents answer the interrogatory and that two entries on Plaintiff's privilege log should be produced because they appear relevant.

In response, Plaintiff argues that it identified and produced documents containing the relevant information, including correspondence, invoices, and ledgers. These documents purportedly speak for themselves and provide an excellent response to interrogatory 9. Plaintiff argues that the relatively low volume of the documents produced imposes a greater burden on Plaintiff to identify by

specific Bates stamp where the information is located than for Defendant to simply inspect the documents. As for Defendant's request for documents on Plaintiff's privilege log to be produced, Plaintiff notes that the documents relate to a confidential settlement agreement that contains various terms and provisions. As such, the disclosure of those documents would allegedly cause financial harm to Plaintiff and will likely affect the manner in which Plaintiff conducts its business in the future. Because the information requested is available via other documents and discovery tools, Plaintiff argues that it should not be compelled to produce those documents.

**\*8** After full consideration of the parties' arguments, it is clear that Plaintiff must supplement its discovery response and specify the records in greater detail so that Defendant can locate the relevant information. As Plaintiff's response stands now, Plaintiff merely refers generically to the documents as "responsive," yet Rule 33(d) requires a level of sufficient detail in order for parties to comply with their discovery obligations. While Plaintiff may believe that there is only a relatively low volume of documents at issue for interrogatory 9, it does not excuse Plaintiff's failure to comply with Rule 33(d). In fact, the

low volume of documents should make it an easier burden for Plaintiff to amend its response and provide a sufficient level of the documents produced. If Plaintiff cannot meet this requirement, "it must provide a traditionally-styled answer to the interrogatory." *United States v. Peter R. Brown Constr. Inc.*, 2012 WL 12903894, at *1 (M.D. Fla. Dec. 27, 2012). To this extent, Defendant's Motion is **GRANTED**. [6]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Compel is **GRANTED in PART** and **DENIED in part**. Plaintiff is compelled to provide better responses to Defendant within twenty-one (21) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of May, 2017.

### All Citations

Slip Copy, 2017 WL 1927957

---

Footnotes

1    This matter was referred to the undersigned Magistrate Judge by the Honorable James Lawrence King on April 20, 2017. [D.E. 21].

2    Defendant is a Florida corporation involved in the sale and leasing of aircraft engines, airframes, and component parts.

3    Rule 33(d) provides "that, if the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records, and the burden of ascertaining the answer would be substantially the same for either party, the responding party may answer by specifying the records in sufficient detail that must be reviewed and allowing the interrogating party a reasonable opportunity to examine and audit those records." *Jones Creek Inv'rs, LLC v.Columbia Cty., Georgia*, 2012 WL 12898402, at *5 n.9 (S.D. Ga. Nov. 8, 2012).

4    As for Defendant's contention that Plaintiff must identify whether any responsive documents were withheld on the basis of privilege—for the years 2012, 2014, 2015, 2016, and 2017–Defendant's argument is persuasive. Plaintiff's confidentiality objections to Defendant's interrogatories would be improper if, in fact, Plaintiff withheld responsive documents. If no documents or information were actually withheld, a clarifying statement to that effect is necessary. If Plaintiff, however, relied on a privilege to withhold such materials, an amended privilege log is required for those documents. To this extent, Defendant's Motion is **GRANTED**.

5    As for Defendant's suggestion, that some of the documents identified on Plaintiff's privilege log may not be privileged, there is nothing in Defendant's Motion that supports this conclusion other than the speculative assertion that the documents relate in some way to the mitigation of damages. Without more legal analysis or reasoning on why these documents should be produced, the Court has no basis to compel Plaintiff to produce these materials. As a result, Defendant's Motion, on this basis, must be **DENIED**.

6    As for Defendant's request to compel Plaintiff to produce documents on its privilege log that appear relevant, Defendant has again failed to support its argument with any support other than pure speculation. Moreover, Defendant's argument is devoid of any legal reasoning or case law that controls the discovery of privileged materials. Accordingly, Defendant's Motion as it relates to the discovery of privileged items in response to interrogatory 9 is **DENIED**.

2017 WL 3394614
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

Narcisa Perez CHAVEZ, Plaintiff,

v.

Bernarda M. ARANCEDO, Defendant.

Case No. 17-20003-Civ-TORRES

|

Signed 08/08/2017

**Attorneys and Law Firms**

K. David Kelly, Jamie H. Zidell, Neil Tobak, Rivkah Fay
Jaff, J.H. Zidell P.A., Miami Beach, FL, for Plaintiff.

Alan Lemura, James D. Whisenand, Whisenand &
Turner, P.A., Miami, FL, for Defendant.

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

EDWIN G. TORRES, United States Magistrate Judge

 **\*1** This matter is before the Court on Narcisa Perez
Chavez ("Plaintiff") Motion to Compel better responses
to Plaintiff's discovery requests and for sanctions against
Bernarda M. Arancedo ("Defendant"). [D.E. 43]. On July
25, 2017, Defendant responded to Plaintiff's Motion [D.E.
45] to which Plaintiff replied on August 1, 2017. [D.E. 46].
Therefore, Plaintiff's Motion is now ripe for disposition.
After careful consideration of the Motion, response, reply,
relevant authority, and for the reasons discussed below,
Plaintiff's Motion is **GRANTED in part** and **DENIED in
part**.

## *I. BACKGROUND*

Plaintiff filed this action on January 2, 2017 and alleges
that Defendant violated the Fair Labor Standards Act
(the "FLSA") and the Florida Minimum Wage Act.
Plaintiff claims that she had an employee relationship
with Defendant from January 23, 2012 through December
30, 2016. Plaintiff's earnings purportedly fell below the
Federal and Florida minimum wage for the services she
performed as a maid at Defendant's personal residence.

Defendant denies all of Plaintiff's allegations and the
matter is currently set for trial on October 9, 2018 with a
discovery deadline of June 28, 2018.

## *II. APPLICABLE LEGAL PRINCIPLES AND LAW*

Under the Federal Rules, a party may pose interrogatories
related to any matter into which Rule 26(b) allows inquiry,
FED. R. CIV. P. 33(a)(2), request the production of
any documents that fall within the scope of Rule 26(b),
FED. R. CIV. P. 34(a), and serve requests to admit
certain matters within the scope of Rule 26(b)(1), FED.
R. CIV. P. 36(a)(1). Rule 26(b) also allows discovery
"through increased reliance on the commonsense concept
of proportionality." *In re: Takata Airbag Prod. Liab.
Litig.*, 2016 WL 1460143, at \*2 (S.D. Fla. Mar. 1, 2016)
(quoting Chief Justice John Roberts, *2015 Year–End
Report on the Federal Judiciary 6* (2015)). "Proportionality
requires counsel and the court to consider whether
relevant information is discoverable in view of the needs
of the case." *Tiger v. Dynamic Sports Nutrition, LLC*,
2016 WL 1408098, at \*2 (M.D. Fla. Apr. 11, 2016). If
the opposing party objects to interrogatories or requests,
the requesting party may then file a motion to compel
production pursuant to FED. R. CIV. P. 37, but only after
its counsel, in good faith, confers with opposing counsel
to resolve discovery disputes without court intervention.
See FED. R. CIV. P. 37(a)(1).

The Federal Rules afford the Court broad authority
to control the scope of discovery, *Josendis v. Wall
to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307
(11th Cir. 2011), but "strongly favor full discovery
whenever possible. See *Farnsworth v. Procter & Gamble
Co.*, 758 F.3d 1545, 1547 (11th Cir. 1985). Courts
must consequently employ a liberal and broad scope of
discovery in keeping with the spirit and purpose of these
rules. See *Rosenbaum v. Becker & Poliakoff, P.A.,* 708 F.
Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases).
The "overall purpose of discovery under the Federal Rules
is to require the disclosure of all relevant information, so
that the ultimate resolution of disputed issues in any civil
action may be based on a full and accurate understanding
of the true facts, and therefore embody a fair and just
result." *State Nat'l Ins. Co. v. City of Destin*, 2015 WL
11109379, at \*1 (N.D. Fla. Sept. 1, 2015).

**\*2** However, while the scope of discovery is broad, it is not without limits. *See Washington v. Brown & Williamson Tobacco*, 959 F. 2d 1566, 1570 (11th Cir. 1992); *Rossbach v. Rundle,* 128 F. Supp. 2d 1348 (S.D. Fla. 2000) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)). To show that the requested discovery is otherwise objectionable, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *See Rossbach*, 128 F. Supp. 3d at 1354 (citing in part *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)).

Boilerplate objections and generalized responses are improper. *See Alhassid v. Bank of America*, 2015 WL 1120273, at *2 (S.D. Fla. March 12, 2015). This District has frequently held that objections which fail to sufficiently specify the grounds on which they are based are improper and without merit. *See, e.g., Taylor v. Bradshaw,* 2014 WL 6459978 (S.D. Fla. Nov. 14, 2014); *Abdin v. Am. Sec. Ins. Co.*, 2010 WL 1257702 (S.D. Fla. March 29, 2010). More specifically, objections simply stating that a request is "overly broad, or unduly burdensome" are meaningless and without merit. *Abdin*, 2010 WL 1257702 at *1 (quoting *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008)).

In addition to the Federal Rules, Southern District Local Rule 26.1 controls the necessary procedure a party must follow when objecting to a request for production or asserting a claim of privilege. It requires that:

> All disputes related to discovery shall be presented to the Court by motion (or, if the Court has established a different practice for presenting discovery disputes, by other Court-approved method) within (30) days from the: (a) original due date (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute; (b) date of the deposition in which the dispute arose; or (c) date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials.

> Failure to present the dispute to the Court within that timeframe, absent a showing of good cause for the delay, *may* constitute a waiver of the relief sought at the Court's discretion. The thirty (30) day period set forth in this rule may be extended once for up to seven (7) additional days by an unfiled, written stipulation between the parties, provided that the stipulation does not conflict with a Court order.

S.D. Fla. L.R. 26.1(g) (emphasis added). On its face, Rule 26.1(i) is therefore plainly discretionary. While the grounds for a motion tends to be the moment at which responses are filed, this is not always necessarily the case. *See, e.g., Socas v. Northwestern Mut. Life Ins.*, 2008 WL 619322 (S.D. Fla. March 4, 2008) (finding that the occurrence triggering the motion to compel was when the requesting party examined certain documents months after their initial requests had been answered); *United States v. Polo Pointe Way, Delray Beach, Fl.*, 444 F. Supp. 2d 1258, 1261 (S.D. Fla. 2006) (finding that the "occurrence" at issue was a deposition that took place after responses were filed).

In pertinent part, the Local Rules also provide that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.*" S.D. Fla. L.R. 26.1(e)(B)(i) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any ... production demand ... and an answer is not provided on the basis of such assertion ... [t]he attorney asserting the privilege shall ... identify the nature of the privilege ... being claimed." S.D. Fla. L.R. 26.1(e)(B).

### III. ANALYSIS

**\*3** Plaintiff's Motion seeks to compel Defendant to provide better discovery responses and produce

responsive documents. On May 3, 2017, Plaintiff served Defendant with her first set of written discovery, including Plaintiff's requests for admissions, requests for production, and interrogatories. Defendant served her discovery responses on June 2, 2017. Plaintiff suggests that Defendant has lodged improper discovery responses that are germane to Plaintiff's claims and that many items in dispute relate directly to Plaintiff's allegations and to Defendant's affirmative defenses. Plaintiff also believes that Defendant's responses were made in bad faith and that Defendant's objections do not make clear where or not the Defendant is withholding any remaining relevant documents. Because the parties have purportedly reached an impasse [1], Plaintiff requests that the Court compel Defendant to provide better responses to Plaintiff's requests for production 1-3, 5, 9-12, 21, and 27 within one week of the Court's Order. Plaintiff also requests that Defendant's objections be deemed waived and that Plaintiff be awarded reasonable attorney's fees and costs in filing her Motion.

In response, Defendant argues that Plaintiff has failed to carry her burden of proof and has not met established legal criteria or a factual predicate for either an order compelling better responses or for an award of sanctions. Specifically, Defendant claims that she already produced *all* documents relevant to this action and that any remaining documents that Plaintiff is requesting simply do not exist. Defendant contends that she has fully complied with her discovery obligations and produced ninety-nine pages of materials or approximately 36.4 MB of data. Defendant also suggests that a review of her discovery responses shows that Plaintiff was paid in cash and that Defendant does not have (1) any documents or way to establish the weekly or total amounts paid by Defendant, (2) the number of hours Plaintiff worked in each of the weeks at issue, (3) or any records where Plaintiff requested, demanded, or claimed that she was compensated.

Furthermore, Defendant believes that Plaintiff's discovery requests are improper because they are more applicable to business employers and not tailored to the facts of this case where Defendant was merely an individual housewife who retained Plaintiff as an independent contractor as a maid. Plaintiff's discovery requests are also allegedly overbroad in temporal scope because Plaintiff stipulated that she only provided maid services for Defendant

between 2012 to 2016. As such, any documents requested should allegedly adhere solely to this time frame.

### A. *Requests 1-3*

In Plaintiff's request 1, Plaintiff seeks a "copy of the Individual Defendant's federal tax returns for the year[s] 2011, 2012, 2013, 2014, 2015, and 2016, including quarterly reports (filed with both the IRS and [the] state of Florida)." [D.E. 43]. Relatedly, Plaintiff's requests 2 and 3 seek copies of all documents used by Defendant in preparation of Defendant's federal tax returns. Plaintiff argues that the documents requested are directly relevant because they may assist in demonstrating that Plaintiff was an employee—rather than an independent contractor—as defined under the FLSA. Plaintiff also believes that the requested documents might reflect information on whether the Defendant purchased supplies for Plaintiff to indicate Plaintiff's employment status. Because Defendant's individual tax returns may also show that Defendant lacks credibility on the requirement of including sufficient information about an employment relationship, Plaintiff contends that Defendant must produce the documents requested.

Defendant's response is that Plaintiff's request fails for several reasons. [2] First, Defendant argues that request 1 is overbroad in temporal scope because, by Plaintiff's own allegation, a relationship between the parties did not begin until January 23, 2012 and therefore Plaintiff's request improperly seeks materials from 2011. Second, Defendant contends that Florida does not have a personal income tax and that there are no filings with the state of Florida that exist. Third, Defendant suggests that she is only an individual housewife and not a business, meaning there are no quarterly reports that were ever filed with the federal government. Fourth, Defendant states that Plaintiff was the *only* independent contractor or employee that Defendant hired during the time period at issue. As such, Defendant asserts that she did not file any federal income tax returns that contain any information about Plaintiff including any information that would reflect Plaintiff being Defendant's employee. Defendant notes that this includes any information related to "inventories," "trade notes and accounts receivable," "depletable assets," "other assets," or other deductions related to "uniforms, computers office expenses, supplies, automobile and truck expenses," or other business related expenses. [D.E. 45]. And fifth, Defendant argues that she

did not claim any deductions in her income tax returns related to any lodging, food, or other provisions that might relate to Plaintiff. In sum, Defendant suggests that requests 1-3 are improper because they are overbroad in temporal scope and seek irrelevant materials that have no bearing on the claims presented.

**\*4** The production of tax returns is ordinarily not produced because "there is a public policy against their disclosure unless (1) it clearly appears that they are relevant to the subject matter of the action, and (2) a compelling need is shown because the information contained therein is not otherwise available." *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001) (citing *Cooper v. Hallgarten & Co.,* 34 F.R.D. 482; 483-84 (S.D.N.Y. 1964)). Here, Plaintiff has met the two prongs identified because the tax returns are, at the very least, relevant to the question of Plaintiff's employment status and impeachment evidence. *See, e.g., Rindfleisch v. Gentiva Health Servs., Inc.*, 2015 WL 12552052, at *2 (N.D. Ga. Feb. 10, 2015) ("The Court finds that Plaintiffs' federal and state income tax returns, with all attachments and schedules, are, at the very least, arguably relevant to damages in this action. The returns may show other sources of income for Plaintiffs, other employers for Plaintiffs, or provide impeachment evidence, among other things.").

However, Plaintiff's request is overbroad in temporal scope because Plaintiff only worked for Defendant from January 23, 2012 to December 30, 2016. And the statute of limitations for FLSA cases is at most three years, meaning the only relevant tax returns are from 2013 to 2016. See *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1323 (11th Cir. 2007) ("Although the ordinary statute of limitations in cases brought under the FLSA is two years, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued.") (citing 29 U.S.C § 255(a)). As such, Plaintiff's Motion is **GRANTED**, but only in so far as Defendant is compelled to produce her federal tax returns from 2013 to 2016.

As for requests 2 and 3—which seek copies of all documents used by Defendant in preparation of Defendant's federal tax returns—we find that Plaintiff's request is facially overbroad and not necessarily tailored to the claims presented. Any information that Plaintiff seeks to discover, with respect to her employment status

and impeachment evidence, should be adequately set forth in Defendant's tax returns. Therefore, Plaintiff's Motion, as it relates to requests 2 and 3, is **DENIED**.

### *B. Request 5*

In request 5, Plaintiff seeks "[a]ll of the Defendants' bank records, including without limitation bank statements, cancelled checks, etc., from any and all banks the Defendants have/had accounts for the years 2011, 2012, 2013, 2014, 2015, and 2016." [D.E. 43]. Defendant takes issue with this request for several reasons. First, Defendant argues that she only paid Plaintiff in cash and therefore a request for all of Defendant's banking accounts is irrelevant. Second, Defendant states that the request is overbroad in temporal scope because there was no relationship between the parties in 2011. Third, Defendant believes that request 5 is overbroad because it requests every bank record between the years requested and that there is no appropriate basis to violate Defendant's privacy rights. Finally, Defendant claims that she has produced banking records that reflect withdrawals of cash that were used to directly pay Plaintiff and that these items are the most relevant to the information that Plaintiff seeks. Therefore, Defendant suggests that request 5 can be easily denied because, other than the banking records produced thus far, no other records exist that relate in any way to the claims presented.

We agree with Defendant that Plaintiff has presented no persuasive reason as to why all of Defendant's banking records are relevant to this action. There is no dispute between the parties that Plaintiff was paid via cash and Defendant has already produced documents that evidence where Defendant withdrew cash to pay Plaintiff. Therefore, Plaintiff's Motion, as it relates to request 5, must be **DENIED** because it is (1) overbroad in temporal scope, (2) overbroad with respect to the broad range of documents requested, and (3) fails to demonstrate how a request for all of Defendant's banking records are relevant.

### *C. Request 9*

**\*5** In request 9, Plaintiff seeks "[a]ll receipts for all payments made to Plaintiff by Defendant[ ] during Plaintiff's entire employment term with Defendant[ ]," including all paystubs from all paychecks. [D.E. 43]. Plaintiff claims it is absurd that Defendant refuses to produce the requested documents considering this is a

wage and hour case. Yet, Plaintiff's request lacks merit because the parties agree that Plaintiff was only paid in cash. Defendant also states that she has nothing to produce because there were never any paychecks from which any paystubs could be derived. Other than the banking records that have already been produced that show cash withdrawals for payments made to Plaintiff, Defendant states that there are no other materials to produce in response to request 9. As such, the Court has no basis to question the veracity of Defendant's representation and request 9 is therefore **DENIED**.

### D. *Request 10*

In request 10, Plaintiff seeks "[a]ll contracts/document[s] of employment relating to Plaintiff's employment with Defendant[ ]." [D.E. 43]. Defendant takes issue with request 10 because Defendant has allegedly stated many times that no employment documents exist in response to request 10. Specifically, Defendant argues that on June 28, 2017, Defendant stated that she "has no employment document that is relevant or material to this employment request." [D.E. 45-3]. And Defendant also asserted in her discovery response that any documents related to Plaintiff's status as an independent contractor have already been produced.

We agree with Defendant that she has sufficiently stated that there are no additional documents to produce in response to Plaintiff's discovery request. The reason why request 10 appears to be at issue is because Plaintiff believes that the Defendant's discovery response was ambiguous and unclear as to whether any responsive documents remain outstanding. Yet, Defendant made clear in response 10—and in subsequent email conversations—that there are no additional documents to produce on the question of whether Plaintiff was an employee or an independent contractor. And again, we have no reason to doubt the veracity of Defendant's response at this time. Therefore Plaintiff's Motion, as it relates to request 10, is **DENIED**.

### E. *Requests 11-12, and 21*

In request 11, Plaintiff seeks "[a]ll time sheets," "punch cards," "work orders," and "time cards for all weeks worked by Plaintiff for Defendants beginning with Plaintiff's commencement of employment with Defendant[ ] and ending at the time of Plaintiff's employment dismissal," including all

documents "pertaining to hours worked by Plaintiff for Defendant[ ]." [D.E. 43]. In request 12, Plaintiff seeks "[a]ll documents, records, electronic data that pertain and relate to Plaintiff's employment hiring and or employment dismissal with Defendants." *Id.* And in request 21, Plaintiff seeks "[a]ny and all time cards, time and attendance sheets and other documents which indicate or reflect the hours worked by Plaintiff during the course of his employment by the Defendant[ ]." *Id.* The basis for all of these requests is that the items are relevant to Plaintiff's FLSA claims and may demonstrate that Plaintiff was an employee and not an independent contractor.

However, Defendant stated in both her discovery response and in subsequent email conversations that no responsive documents exist for any of these requests, other than what has already been produced. Thus, Defendant does not dispute Plaintiff's contention that the items requested would be relevant. Defendant merely claims that the items Plaintiff seeks have either already been produced or do not exist. Because Defendant has adequately stated that there are no materials that exist in response to requests 11-12 and 21, Plaintiff's Motion, on this basis, must be **DENIED**.

### F. *Request 27*

Finally, in request 27, Plaintiff seeks the "complete personnel file of Plaintiff and any and all other documents related to his employment by the Defendant[ ]." [D.E. 43]. Defendant objects to this request because Defendant has purportedly stated to Plaintiff on many occasions that Defendant has no personnel files to produce. Other than the documents relating to Plaintiff's independent contractor status, Defendant believes that she has met her discovery obligations and that request 27 has no merit. We agree that, similar to the requests discussed above, Defendant has adequately stated in her discovery response to request 27 that no additional documents exist in relation to Plaintiff's claims. While Plaintiff continues to question the veracity of Defendant's contentions, there is nothing in the existing record to suggest that Defendant representation is false or misleading. As such, Plaintiff's Motion, as it relates to request 27, is **DENIED**.

### *IV. CONCLUSION*

**\*6**  For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED in part** and **DENIED in part**. [D.E. 43]. Defendant is compelled to produce to Plaintiff her federal tax returns in request 1 from 2013 to 2016 within fourteen (14) days from the date of this Order. To this extent, Plaintiff's Motion is **GRANTED**. As for the remainder of Plaintiff's document requests, Plaintiff's Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of August, 2017. [3]

**All Citations**

Slip Copy, 2017 WL 3394614

Footnotes

1    Defendant strongly disputes the notion that the parties have properly conferred in good faith as required by the Local Rules on the disputes in Plaintiff's Motion.

2    Defendant accuses Plaintiff of using a set form of discovery requests that were not changed to address the specific issues of this case. Thus, Defendant alleges that Plaintiff violated its obligation to the Court and to the Defendant to not to file or transmit inappropriate discovery requests that are clearly irrelevant.

3    Both parties seek attorney's fees pursuant to Rule 37 in connection with Plaintiff's Motion. Plaintiff believes that fees are warranted because Defendant purportedly made baseless objections that rise to the level of bad faith. On the other hand, Defendant states that it was crystal clear that this dispute could have been easily avoided, but for Plaintiff's bad faith conduct in failing to cooperate and resolve the issues without court intervention. Yet, at this time, we decline to award fees to either party. Therefore, to the extent either party seeks an attorney fee award, those motions are **DENIED**.

---

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

203 F.Supp.3d 1195
United States District Court,
S.D. Florida.

Edgardo G. BONET, Plaintiff,
v.
NOW COURIER, INC., and
Alexander Mola, Defendants.

Case No. 14-23217-CIV-WILLIAMS
|
Signed August 24, 2016
|
Filed August 25, 2016

## Synopsis

**Background:** Independent contractor brought action against employer, alleging violations of the Fair Labor Standards Act (FLSA) under both the minimum wage and overtime provisions of the statute. Following jury trial, employer moved for dismissal as a sanction and judgment as a matter of law.

**Holdings:** The District Court, Kathleen M. Williams, J., held that:

[1] contractor's lack of candor at deposition supported dismissal of action with prejudice;

[2] contractor's refusal to produce documents during discovery supported dismissal of action with prejudice;

[3] contractor's conduct during trial supported dismissal with prejudice of contractor's action; and

[4] contractor was not employer's employee within the meaning of FLSA.

Motion granted.

## Attorneys and Law Firms

**\*1197** Elizabeth Olivia Hueber, Mager & Paruas, Hollywood, FL, Allyson Morgado, Joshua Howard Sheskin, Rivkah Fay Jaff, J.H. Zidell P.A., Julia M. Garrett, Julia M. Garrett, P.A., Stephen Michael Fox, Jr.,

Jamie H. Zidell, Miami, FL, Steven C. Fraser, Steven C. Fraser, P.A., Hallandale Beach, FL, for Plaintiff.

Mark A. Douglas, Mark A. Douglas, P.A., Ft. Lauderdale, FL, for Defendants.

### ORDER

KATHLEEN M. WILLIAMS, UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court following a jury trial held on August 1 through August 3, 2016. At the conclusion of Plaintiff Edgardo Bonet's case, Defendants Alexander Mola and Now Courier, Inc. moved *ore tenus* for a directed verdict under Federal Rule of Civil Procedure 50. Defendants also made an *ore tenus* request for dismissal under Federal Rule of Civil Procedure 41 based on Plaintiff's misconduct throughout this litigation. For the reasons stated on the record at trial on August 3, 2016 and discussed further below, the Court granted Defendants' motions. This order follows.

## I. BACKGROUND

The central facts and procedural history of this case are well known by the Parties and have been comprehensively set out in numerous prior orders by the Court. (*See, e.g.,* DE 20, DE 75, DE 101). Plaintiff initiated this case on August 31, 2014 against Defendants Now Courier, Inc. and Alexander Mola alleging violations of the Fair Labor Standards Act ("FLSA") under both the minimum wage and overtime provisions of the statute. (DE 1). Defendants were served on September 11, 2014 (DE 7), and filed an answer (DE 8) on September 30, 2014. In their answer, Defendants denied Plaintiff's allegations and stated that Plaintiff was an independent contractor and not an employee, making him ineligible for relief under the FLSA. The following day, Plaintiff moved to strike Defendants' answer (DE 9) because it was filed *pro se* on behalf of a corporate defendant (Now Courier) as well as an individual defendant (Alexander Mola). In response, the Court entered an order (DE 10) instructing the corporate defendant to retain counsel and file an answer to the complaint by October 31, 2014.

**\*1198** On October 31, 2014, Defendants, now represented by counsel, filed a motion to dismiss for failure to state a claim, which the Court granted. (DE

12, DE 20). Plaintiff then filed an amended complaint (DE 22) on December 19, 2014 and Defendants again moved to dismiss. (DE 25). The Court converted the second motion to dismiss into a motion for summary judgment (DE 34), and Plaintiff cross-moved for partial summary judgment (DE 56). [1] On June 1, 2016, the Court issued an order (DE 75) which granted summary judgment on the issue of enterprise coverage, but held that, despite a number of strong indications that Plaintiff was an independent contractor, "[a] review of each of the[ ] [relevant] factors and the record as a whole reveals that issues of material fact remain regarding whether Plaintiff was an independent contractor or an employee."

On July 25, 2016—again, a week before trial was set to begin—Plaintiff filed a notice informing the Court that he no longer intended to pursue any of his minimum wage claims and wished to proceed only on his overtime claims. (DE 99). On Monday, August 1, 2016, a jury was selected and trial began on the remaining overtime claim. In light of the Court's grant of summary judgment on the question of enterprise coverage and Plaintiff's decision on the eve of trial to proceed only on his overtime claims, Plaintiff's recovery was contingent upon proving at trial that he was (1) a covered employee under the Act, (2) engaged in commerce or in the production of goods for commerce, (3) who has worked more than forty hours in a workweek, and (4) has not been paid the overtime wages due to him under the Act. 29 U.S.C. § 207.

During trial on August 2 and August 3, 2016 Defendants made two *ore tenus* motions for dismissal under Rule 41 and Rule 50 of the Federal Rules of Civil Procedure, which the Court granted on August 3, 2016 for the reasons set out below.

## II. SANCTIONS UNDER RULE 41

### A. Legal Standard

**[1]** Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with the[ ] [federal] rules or a court order, a defendant may move to dismiss the action or any claim against it." Under this rule, "[t]he district court ... has inherent authority to sanction parties for 'violations of procedural rules or court orders,' up to and including dismissals with prejudice." **\*1199** *Perry v. Zinn Petroleum Companies,* LLC, 495 Fed.Appx. 981, 983 (11th Cir.2012) (citing *Donaldson v. Clark,* 819 F.2d 1551, 1557 n. 6 (11th Cir.1987); *Betty*

*K Agencies, Ltd. v. M/V MONADA,* 432 F.3d 1333, 1337 (11th Cir.2005)). Though Courts have cautioned that dismissal of an action as a sanction under Rule 41 is a "sanction of last resort, applicable only in extreme circumstances," such a remedy is warranted when there is "both a clear record of willful conduct and a finding that lesser sanctions are inadequate." *Zocaras v. Castro,* 465 F.3d 479, 483 (11th Cir.2006) (citing *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985) and *Betty K Agencies* 432 F.3d at 1339, respectively).

### B. Discussion

Throughout the course of this litigation, Plaintiff's conduct has been an impediment to the judicial process. As the Court noted on various occasions—both in its orders and on the record—Plaintiff has consistently refused to answer the questions of opposing counsel at depositions, produce relevant documents during discovery, adhere to judicial rulings during trial, and otherwise respect and abide by the rules and orders of this Court. This conduct continued despite warnings, despite the imposition of lesser sanctions, and despite direct court orders addressing this behavior.

#### i. Lack of Candor at Deposition

**[2]** In the Court's June 1, 2016 order on the Parties' cross motions for summary judgement (DE 75), the Court included a number or troubling excerpts from Plaintiff's deposition testimony. (*See, e.g.,* DE 75 at 6-7, 12-14, 16-19). As those excerpts demonstrate, Plaintiff repeatedly refused to respond to defense counsel's questions, giving answers such as "No, I don't remember"; "I don't know"; "that's an absurd question"; "don't you have the [bank] statements"; "come on, why are you asking me the same questions again? ... You have a pen, you can write down"; "don't ask me anymore about this"; "oh god"; "I tell you, go make the calculations"; and "that's none of your business." [2] (*See, e.g.,* Bonet Depo DE 58-1 at 22:16, 21; 23:8, 13, 16; 24:23; 27:6; 27:24; 34:7; 41:12-13, 18-19; 49:8-14; 67:13; 69:25; 75:9; 79:14-86:24; 90:3; 114:2; 120:24; 121:4; *see also* Trial Transcript ("Tr.") (Aug. 3, 2016)). [3] The order concluded by noting that "[t]he Court has serious concerns about Plaintiff's candor, his refusal to provide an explanation (or supporting documentation) regarding his damages calculation, and his inconsistent testimony regarding his substantial and unexplained

Bonet v. Now Courier, Inc., 209 F.Supp.3d 1191 (2016)
95 Fed.R.Serv.3d 654

income." (DE 75 at 24). The order also explicitly stated that "[a]lthough no motion for sanctions has been filed with regard to plaintiff's failure to comply with orders of this Court and the rules of discovery, the Court nonetheless finds, pursuant to its inherent authority, that sanctions are appropriate for the misconduct of Plaintiff and his counsel at Plaintiff's deposition. The Court will address the appropriate sanctions at the conclusion of this case." (DE 75 at 24).

### ii. Refusal to Produce Documents During Discovery

[3] In the June 1, 2016 summary judgment order (DE 75), the Court also noted **\*1200** its concern regarding Plaintiff's refusal to produce certain documents in discovery despite numerous orders directing him to do so. Specifically, Plaintiff failed to timely produce his bank records for 2011-2014, to produce "travel notebooks" that he had purportedly kept of his work travel during the time period covered by his FLSA claim, and to produce the supporting documentation and receipts underlying the calculations in his 2011-2014 tax returns.

### a. Plaintiff's Delay in Producing the Bank Records

Defendants' first request for production of documents is dated June 17, 2015. In that document, Defendants requested, among other things, "[a]ll bank statements for plaintiff" from 2011-2014. On August 27, 2015, the Parties noticed a discovery hearing before Magistrate Judge Andrea M. Simonton for September 2, 2015. (DE 44, DE 45). In Defendants' notice, counsel indicated that Plaintiff had refused to turn over the requested bank statements, "claiming that the account is closed and defendant should subpoena these accounts from Wells Fargo." (DE 44 at 1). Defendants further informed the Court that "[d]espite a request, no account number has ever being [*sic*] produced." *Id.*

At the September 2, 2015 discovery hearing, Plaintiff confirmed that he had not turned over his bank records as requested by Defendants nor had he provided defense counsel with the account number. (*See* DE 55 at 1-2). Judge Simonton ordered Plaintiff to produce the Wells Fargo bank records for the years 2012-2014 on or before September 16, 2015. (*Id.* at 2, 3). On September 18, 2015, Defendants filed a second motion to extend the time to

complete discovery, indicating that Plaintiff had failed to comply with Judge Simonton's order regarding the 2011-2014 bank records. (DE 49 ¶ 4). The Court granted the extension and set a status conference for September 24, 2015. At that hearing, Plaintiff again conceded that he had not complied with Judge Simonton's order and offered no justification for his failure to do so. Following the hearing, the Court set yet another deadline—September 28, 2016—for Plaintiff to comply with his discovery obligations and the Court's orders by turning over his bank records. (DE 54). As a result of Plaintiff's willful delay and non-compliance, defense counsel had less than 48 hours to review the bank records prior to Plaintiff's deposition on September 30, 2015. (*See* Bonet Depo DE 58-1 at 28).

### b. Plaintiff's Failure to Produce his Travel Notebooks

Defendants' document requests also included "[a]ny time cards, logs, mileage sheets, or other reports showing time spent working on each day" during 2012-2015. In Defendants' Notice of Hearing, however, defense counsel represented that "during the deposition, Plaintiff produced notebooks purporting to contain all of his logs, mileage and other information he kept related to his work with [N]ow [C]ourier and at times referred to these notes in answering our questions. ... Plaintiff deposed that he turned over [h]is notes containing logs of mileage, dates and times from 'the first day he started working' to his attorneys. None of these were turned over to the defense." (DE 44 at 2).

Plaintiff's failure to produce these notebooks was addressed at the September 2, 2016 discovery hearing before Judge Simonton. As memorialized in Judge Simonton's order (DE 55), at the hearing "Plaintiff's Counsel represented that she believed that all of the notebooks had been produced to the Defendants." (DE 55 at 3). Judge Simonton ordered counsel "to meet and confer regarding the production of the notebooks" and directed "Plaintiff to show the notebooks to the Defendant that Plaintiff referred to at his **\*1201** deposition." (*Id.*). She further ordered that "... on or before September 16, 2015, Plaintiff's counsel shall ensure that all responsive documents that Plaintiff's Counsel represented would be produced, have, in fact, been produced." (*Id.*). Once again, despite a court order directing Plaintiff to turn over his travel notebooks and his attorney's representation that these documents would

be turned over to the Defense, no travel notebooks were ever produced.

### c. Plaintiff's Failure to Produce the Supporting Documentation for his Tax Returns

Also included in Defendants' initial document requests were "[a]ll documents relied upon in filing Plaintiff Tax Returns" and "all documents provided to Plaintiff Accountant to aid in preparation of Plaintiff Tax Returns" from 2011-2014. No such documents were produced in discovery. When asked about the required tax documentation, Plaintiff stated at his deposition that he either did not know or did not recall how the figures on his tax return were calculated or what expenses were included in the values listed therein:

Q: Sir, I am asking you, did your tax return reflect gross receipts for the year 2012 of $31,482?

A: If this is what my attorney handed over to you then it is correct, but I do not remember the amounts.

Q: On this document, sir, which was turned over to us, which has your name and social security number, and is titled Profit or Loss from Business, the form for 2012, it indicates that you have car and truck expenses of $22,089 in line number 9; is that correct?

A: Again, I repeat, I do not remember, but if this is what my attorney furnished to you then it is correct.

Q: On line 27a of the said document it indicates you have other expenses of $5,990; is that correct, sir?

A: I repeat the same, sir. I don't remember, but if this is what my attorney provided to you then it is correct.

Q: And on line 31 it indicates net profit or loss of $1,033 for the year 2012, is that correct, sir? Line 31 of the said document indicates net profit and loss of $1,033; is that correct, sir.

A: The same answer.

Q: What is the answer, sir?

A: The one I have repeated three times.

Q: Can you repeat again for us. What is the answer? Is that what your tax returns reflect?

A: I don't remember. I don't remember.

(Bonet Depo DE 58-1 at 22:7-23:8). Plaintiff gave similar testimony at trial, stating, "I do not know anything about the taxes. ... I do not prepare them." [4] (*See* Tr. (Aug. 2, 2016)).

Defense counsel's questions about specific documents—such as receipts, payment slips, and invoices for fuel purchases—were met with equally uncooperative answers:

Q: Sir, I asked for receipts and payment slips, service records, I did not receive any. I asked for—

A: There is none.

Q: I asked for receipts, invoices for fuel purchases, I did not receive any.

**\*1202** A: And you won't receive them either. You have to make the—you have to calculate that yourself.

(Bonet Depo DE 58-1 at 120:14-20).

### iii. Conduct During Trial

**[4]** In light of the conduct described above, the Court explicitly warned Plaintiff in its summary judgment motion that "[i]t should be understood that at trial, unlike at his deposition, Plaintiff will answer, in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the questions posed by defense counsel, particularly proper questions regarding his tax records, bank statements, and how Plaintiff calculated his hourly wage." (DE 75 at 24). Despite this and other admonitions by the Court regarding Plaintiff's recalcitrance, Plaintiff continued to demonstrate disregard for the rules and orders of this Court.

### a. Plaintiff's Refusal to Candidly Answer Questions on Cross Examination

From the start of defense counsel's cross examination, Plaintiff provided the same evasive answers to defense counsel's questions that had been characteristic of his deposition testimony:

Q: So your accountant prepared a profit or loss for a sole proprietor for you which indicates $31,482 in gross receipts is that the total income you made for 2012?

A: If it says that there it has to be that.

Q: Since, Mr. Bonet, Mr. Mola only paid you $26,101.65 in 2012, where was the rest of the money earned?

A: Look them up in the taxes they have to be there.

THE COURT: No. Mr. Bonet, Mr. Douglas asks you a question and you answer his question. ... You need to answer the questions. Mr. Douglas is going to ask you a question again.

* * *

Q: What are some of these specific expenses you have on your car sir?

A: I don't know, everything I took to the accountant.

Q: Your Honor, could you direct the witness to answer my question?

THE COURT: I am not sure exactly. Mr. Bonet, are you testifying that you don't remember any of the items of expenses you told your accountant that were placed on your tax return?

A: No. I am testifying that I don't know anything about how taxes are prepared.

THE COURT: Mr. Bonet, actually that wasn't my question. I think that is as far as we were going to be able to go there. Mr. Douglas, I think you should go on to a different line ... of questioning.

* * *

Q: Mr. Bonet I am going to ask you specifically about some deposits you made in 2013. In January your first deposit was $250 on January 7th. Is that money you earned from Now Courier?

A: Possibly.

Q: There was another deposit for ... $300 on January 22nd. Is that another deposit you made from Now Courier?

A: Possibly.

Q: According to the record sir you were paid on March 5th, $1017 by Now Courier. Did you deposit that money?

A: I don't remember.

Q: The next payment Now Courier made was March 18th another $1,063. Did you deposit that money?

**\*1203** A: I don't remember.

(Tr. (Aug. 2, 2016)).

The transcript abounds with similar examples of Plaintiff's refusal to answer questions on cross examination, despite the Court's clear direction in its order (*see* DE 75) about its expectations for Plaintiff's conduct at trial:

Q: So your testimony, Mr. Bonet, [is that] in 2013 you decided you were an employee, but in 2012 you were still filing your taxes as an independent contractor?

A: All the tax returns—

THE COURT: Mr. Bonet, stop. The answer to that question is yes or no, you can choose either one.

A: Yes.

THE COURT: Okay. Move on, Mr. Douglas.

* * *

Q: I note in the box that says insurance other than health you did not claim any deduction on your 2013 return as you did in 2012. Does that mean you did not have any insurance expenses that year?

PLAINTIFF: (WITNESS SPEAKING IN SPANISH).

THE COURT: No, it is also a yes or no question.

A: Yes, I did have insurance expenses.

THE COURT: Okay.

* * *

Q: The bank statements from 2013 showed deposit[s] totaling over $45,000. That is over twice the amount paid to you by Now Courier.

A: How did you come to that conclusion?

Q: Sir is that a question you are asking me?

THE COURT: I think it is. ...

Q: This is a composite of your bank statements?

A: What page was the $45,000 deposited?

Q: Sir the amount is shown when we examine all of your bank statements from 2013. Are you aware that you made deposits of approximately $45,000?

A: Well—

THE COURT: Yes or no Mr. Bonet. Are you aware you made deposits totaling $45,000?

A: No.

THE COURT: Okay.

(Tr. (Aug. 2, 2016)). Because of these exchanges and the other issues described below, the Court was compelled to send the jury out to remind Plaintiff and counsel of their basic obligations of candor and adherence to the rules of court.


**b. Repeated References to Excluded Evidence**

Even more troubling than Plaintiff's general behavior on cross examination was his direct disobedience of the Court's rulings on evidentiary issues. On July 19, 2016, prior to the start of trial, the Court held a calendar call to address outstanding pretrial issues. At that hearing, the Court granted Defendants' motion to exclude any mention of the "travel notebooks" that had been ordered produced by Judge Simonton but which Plaintiff had refused to provide to Defendants. Additionally, on the first day of trial, the Court excluded references to a car accident settlement, after Plaintiff's counsel raised the issue for the first time (after nearly two years of litigation) during his opening statement. [5] Counsel **1204** were instructed to explain to their client the significance of these rulings.

Notwithstanding unambiguous instruction from the Court (and his counsel)—and the fact that these rulings were a direct consequence of Plaintiff's own actions during discovery—Plaintiff repeatedly referenced the Court's decision to exclude certain evidence and directly testified about evidence that had been excluded in the presence of the jury. First, Plaintiff testified about the underlying tax documentation that he insisted he did not possess at his deposition:

Q: ... I will repeat the question. On line 15 of your tax return for 2012 sir there is an entry for insurance other than health $2,370 would that be the expense for insuring your vehicle sir?

A: Insurance for my vehicle. I found the evidence, but I was not allowed to bring it.

(Tr. (Aug. 2, 2016)). Upon hearing this testimony, the Court excused the jury and issued a stern warning to Plaintiff and his counsel:

Here's our dilemma .... Despite a Court order, despite a day and a half of hearing in-court instructions, despite— by [Plaintiff Counsel's] own admission—six visits wherein you counseled Mr. Bonet as to how and what he must testify to .... Mr. Bonet is unable to answer a single question and has now told the jury the reason why he did not answer the question Mr. Douglas posed was because he had some documents he was never allowed to introduce. ... I am, at this point, seriously concerned about this trial and honestly I am not sure at this point what to do so I am going to take a break and have you talk to Mr. Bonet.

(Tr. (Aug. 2, 2016)). The Court went on to advise Mr. Bonet, "[a]nswer the questions given by the lawyers and do not attempt to introduce matters before this jury that have been ruled inadmissible." (Tr. (Aug. 2, 2016)).

Following a recess, before resuming trial, the Court again reiterated to counsel, that "[t]here should be no answer with, 'but I can't tell you about it'.... What

Mr. Bonet needs to do is listen to the question and answer it directly." (Tr. (Aug. 2, 2016)). Despite this clear admonition, the following exchange took place shortly after the trial resumed, when discussing Plaintiff's tax returns:

> Q: How did you record [the miles included in the car and truck expenses claimed on your taxes] sir?
>
> A: In my reports—well I don't know whether the Judge is going to allow me to talk about this.

(Tr. (Aug. 2, 2016)). Again, the Court excused the jury and spoke with counsel. The Court acknowledged that defense counsel may have opened the door to the admission of Plaintiff's travel notebooks, and allowed counsel to argue that point. Still, the Court noted that, regardless of the outcome of that evidentiary question, Plaintiff had contravened an instruction given to him by the Court both directly and through his attorneys. The Court warned Plaintiff of the potential consequences of his actions:

> THE COURT: Mr. Bonet stop, stop. I am going to give you a warning right now. A direct warning. If you say one more time "I don't know if the Judge will let me," "it hasn't been allowed"—if you say that phrase I am going to sanction you for your conduct.

(Tr. (Aug. 2, 2016)). With regard to the evidentiary question, the Court ruled, on agreement of counsel, that Plaintiff would be permitted to state that he kept a log and gave that information to his accountants, but nothing more. The Court specifically instructed Plaintiff: "Okay. That is all **\*1205** the answer will be. I gave the information to my accountant based on notations I kept about my mileage." (Tr. (Aug. 2, 2016)). The Court then recessed to allow Plaintiff's counsel to explain the import of its ruling to their client. [6]

A few questions later, Plaintiff's obdurate behavior continued. When asked about his bank statements, Plaintiff again raised excluded matters in his testimony, this time relating to the settlement payment for a car accident that had been mentioned by Plaintiff's counsel during opening statements and promptly ruled inadmissible by the Court. Seeing that the prior warnings about lesser sanctions had failed to affect Plaintiff's conduct, the Court addressed the ultimate sanction with Plaintiff:

> THE COURT: Mr. Bonet if you mention that car accident settlement one more time I will dismiss your case. Do you understand me? Yes or no.
>
> PLAINTIFF: Yes.

(Tr. (Aug. 2, 2016)).

### c. Contradictory Testimony from Other Witnesses

When trial resumed the following day, the Defendants called Plaintiff's accountant—and tax preparer—as their first witness. Although the accountant had been subpoenaed for deposition, Defendants had been unable to depose her prior to trial. Consequently, defense counsel asked for permission to *voir dire* the witness prior to her testimony before the jury and the Court granted this request. During that *voir dire,* Plaintiff's accountant gave the following testimony:

> Q: With respect to 2012 are you saying these four sheets of paper is all you found in your file with regard to the 2012 return you prepared?
>
> A: Yes.
>
> * * *
>
> THE COURT: Did I hear you say Mr. Bonet asked you for your copies back?
>
> A: Several months ago.
>
> * * *
>
> THE COURT: Some months ago Mr. Bonet wanted all the supporting documents to be returned to him. Can you give me a timeframe, more than six months less than six months?
>
> A: More than six months.
>
> THE COURT: And you returned the documents to him—you kept no copies for yourself?
>
> A: Yes.
>
> THE COURT: Did you keep some kind of log as to what documents Mr. Bonet had given you to support let's say his deductions, whatever it is that you would

use to make your calculations? Do you know what you gave back to him?

**\*1206** A: I gave back the 1099 forms and his expenses—his insurance the miles that he claimed that he—he didn't bring me anything. He say he has a log book and he brought the numbers already added.

\* \* \*

Q: Do you recall specifically when Mr. Bonet sought to have these documents returned to him?

A: I don't remember.

THE COURT: Was it more than a year ago?

A: Yes, it is about a year.

THE COURT: About a year.

A: Last year around—I think it was July or August.

(Tr. (Aug. 3, 2016)).

These statements directly contradict Plaintiff's repeated assertions that he had given all of the underlying documentation to his accountant and that all questions relating to the manner in which his tax returns were prepared should be directed to her. *See* Section II(B)(ii) (c), *supra.* As the Court noted at trial, the accountant's testimony presents two possible scenarios regarding the tax documentation requested by defense counsel in discovery: Either (i) "[Plaintiff] had asked for all his tax documentation before his deposition ... [and] his answers—I don't know or ask my accountant—in the best possible light would be misleading, dissembling," or (ii) "[Plaintiff] asked for [the tax documentation] after his deposition knowing they were being sought by opposing counsel." (Tr. (Aug. 3, 2016)). In both scenarios, Plaintiff's conduct evidences, at a minimum, a willful disregard for—and intentional interference with—the discovery process, the Federal Rules of Civil Procedure, Plaintiff's obligation of candor to the Court, and this Court's orders, generally.

**C. Conclusion**

Plaintiff's counsel contends that all of the issues described above were not the result of malice. [7] Plaintiff blames his failings throughout this litigation on a host of third parties—discovery omissions were the fault of defense counsel and his attorneys, tax inconsistencies were the

fault of his accountant, and trial missteps were the fault of this Court and his counsel. These explanations strain credulity. To the contrary, Plaintiff's comportment up to and during the trial can only be understood as an effort to obfuscate the issues, flout court orders, and preclude a fair trial on the merits. As such, the Court finds that, taken together, Plaintiff's actions constitute a willful disregard for the judicial process that was undeterred by warnings and lesser sanctions imposed by the Court. Accordingly, the Court dismisses this case with prejudice as a sanction under Federal Rule of Civil Procedure 41.

**III. JUDGMENT AS A MATTER OF LAW UNDER RULE 50**

**A. Legal Standard**

**[5]** **[6]** Federal Rule of Civil Procedure 50 provides for judgment as a matter of law on an issue at trial when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." In ruling on a defendant's motion under this rule the Court "must consider all the evidence in the light most favorable to [the non-moving party], and independently determine whether the facts and inferences point so overwhelmingly in favor of [the **\*1207** moving party] ... that reasonable people could not arrive at a contrary verdict." *See Bruno v. Monroe Cty.,* No. 07–10117–CIV, 2009 WL 2762641, at *1 (S.D.Fla. Aug. 31, 2009) (quoting *Webb–Edwards v. Orange Cty. Sheriff's Office,* 525 F.3d 1013, 1029 (11th Cir.2008)) (internal quotation marks and citation omitted). The Court must rely on the evidence presented at trial in performing this analysis because once "the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Acosta v. James A. Gustino, P.A.,* 646 Fed.Appx. 723, 725, 2016 WL 1104025, at *1 (11th Cir.2016) (per curiam) (citing *Ortiz v. Jordan,* 562 U.S. 180, 184, 131 S.Ct. 884, 178 L.Ed.2d 703 (2011)).

For Plaintiff to prevail on his overtime claim under the FLSA, he bears the burden of proving that he was (1) a covered employee under the Act, (2) engaged in commerce or in the production of goods for commerce, (3) who has worked more than forty hours in a workweek, and (4) has not been paid the overtime wages due to him under the Act. 29 U.S.C. § 207. If any of these elements are not present, Plaintiff cannot recover under the FLSA. Therefore, in the context of Defendants' Rule 50 motion,

if the Court finds that a reasonable jury "would not have a legally sufficient evidentiary basis" to find for the Plaintiff on any of these elements, the Court must direct a verdict for Defendants.

### B. Plaintiff's Failure to Prove he was a Covered Employee

#### i. Background

The overtime provisions of the FLSA only apply to employees. *See Scantland v. Jeffry Knight, Inc.,* 721 F.3d 1308, 1311 (11th Cir.2013). Therefore, if Plaintiff fails to prove that he was performing services as an employee and the evidence shows that he was acting in some other capacity—such as an independent contractor capacity—Plaintiff has failed to prove his claim. *See* 29 U.S.C. § 203(r)(1)(clarifying that covered activities performed for an "enterprise" do not include "the related activities performed for such enterprise by an independent contractor").

**[7]** **[8]** To determine whether an individual is a covered employee under the FLSA, the Court applies the "economic reality" test. *Scantland,* 721 F.3d at 1311. The Court's evaluation under this test takes into account a variety of factors, including the alleged employer's control over the manner in which work is performed; the alleged employee's opportunity for profit or loss; the alleged employee's investment in equipment or materials; whether a special skill is required; the nature and duration of the working relationship; and whether the service rendered is an integral part of the alleged employer's business. *Id.* at 1312. As the Court noted in its prior order, however, these factors are not exclusive and no one factor is dominant; instead, "the overarching focus of the inquiry is economic dependence." *Id.* "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.' " *Id.*

The debate about Plaintiff's status has figured prominently in the Parties' motions to dismiss and motions for summary judgment. Although there was some dispute regarding the proper procedural posture for Defendants' independent contractor defense—namely whether it qualifies as an affirmative defense or simply vitiates Plaintiff's ability to prove an element of the

cause of action—the issue is the same: if Plaintiff is an independent contractor or is otherwise not proven to be an employee, Plaintiff's claim fails. As the Court noted in its order on summary judgment, though the pre-trial record contained evidence **\*1208** that "strongly suggest[ed] that Plaintiff was an independent contractor and not a covered employee" there were remaining issues of material fact relating to Plaintiff's status that precluded a grant of summary judgment. (DE 75 at 23). In light of Defendants' *ore tenus* motion for a judgment under Rule 50, the Court is now tasked with evaluating whether the evidence adduced at trial warrants a directed verdict on this issue. The Court finds that it does.

#### ii. Discussion

Plaintiff's case at trial consisted of the testimony of two witnesses: Defendant Alexander Mola [8] and Plaintiff Edgardo Bonet. Through these witnesses, the parties introduced a number of exhibits, which included Now Courier's travel logs [9] recording Plaintiff's work for Defendants, the agreement signed between the parties regarding the work to be performed, Plaintiff's tax returns from 2012-2014, and Plaintiff's bank records from 2012-2014. (*See* DE 106, DE 107). Nearly all of this evidence undermines Plaintiff's contention that he was an employee while working for Defendants.

#### a. Exhibits Introduced at Trial

**[9]** The exhibits introduced into evidence at trial demonstrate that—in terms of compensation, the characteristics of Plaintiff's work for Defendants, and the terms of Plaintiff's agreement with Defendants when hired—Plaintiff was acting as an independent contractor and not an employee.

#### 1. Independent Contractor Agreement

At trial, Plaintiff introduced the agreement between the Parties that initiated their working relationship. That agreement is titled "Independent Contractor & Non-Compete Agreement." [10] (Pl. Ex. 2). When asked about that document, Plaintiff testified:

Q: On the date [that you signed the agreement] did you specifically discuss with Mr. Mola that you would be an independent contractor?

A: Yes.

(Tr. (Aug. 2, 2016)). Plaintiff went on to testify that he had been hired as a driver in an independent contractor capacity before and well understood what that status meant. These unambiguous responses—in conjunction with Plaintiff's testimony regarding his understanding of the terms of the agreement and the manner in which his work was performed—provide helpful context for the facts adduced at trial, and shed light on Plaintiff's understanding of the "economic reality" of his relationship with Defendants.

### 2. Plaintiff's Tax Returns

Plaintiff's tax returns, introduced by Defendants, similarly evidence that Plaintiff understood himself to be—and was, in fact, treated as—an independent contractor. (Def. Ex. A, B, C). As was the case at his **\*1209** deposition, when asked about his tax returns at trial, Plaintiff studiedly evaded the questions posed by defense counsel and referred all inquiries about the manner in which his taxes were prepared to his accountant. *See* Section II(B)(i) and II(B)(III)(c), *supra.* Still, the tax returns about which defense counsel inquired are undeniably consistent with Plaintiff filing his taxes as an independent contractor, but not as an employee:

Q: On your tax return schedule SE there is a self-employment tax which you indicate $1,033. [Is there a] reason why, if you believe you are an employee, you would be paying self-employment taxes sir?

A: I repeat I do not know anything about the taxes. I do not prepare them.

\* \* \*

Q: [O]n [li]ne 15 of your tax return for 2012 sir there is an entry for insurance other than health $2,370 would that be the expense for insuring your vehicle sir?

A: Insurance for my vehicle. I found the evidence, but I was not allowed to bring it.

(Tr. (Aug. 2, 2016)). After a number of exchanges like the ones above and a stern warning from the Court, Plaintiff ultimately relented and acknowledged that he prepared and filed his taxes as an independent contractor while working for Defendants:

Q: ... I asked you earlier if it was your understanding as an independent contractor you were able to deduct all these expenses or whether could deduct them as an employee.

A: As an independent contractor.

\* \* \*

Q: So you were, in fact, filing your tax returns as a person in business for yourself?

A: Correct.

(Tr. (Aug. 2, 2016)). Plaintiff cannot evade the implications of his tax returns by claiming that he was unaware of the manner in which they were prepared, especially in light of these statements. Additionally, Plaintiff's later testimony made clear that he fully understood the difference between the manner in which he was paid and the tax forms provided to him when working as an independent contractor versus an employee:

Q: Did Alex Mola discuss with you how you would treat your payments as far as taxes are concerned?

A: Well, I knew that—from being an independent contractor he had to provide me with the papers so that I would have my taxes done.

Q: Did Mr. Mola deduct taxes from your payments sir?

A: Never.

Q: He didn't deduct taxes in 2012 or 13 or 14?

A: No.

Q: Did Mr. Mola in fact give you a 1099 at the end of the year you worked?

A: That's correct.

\* \* \*

Q: Okay. So what is your understanding of the difference between being an employee and an independent contractor as far as these [tax] deductions go?

A: As to the deductions companies deduct these to their employees for taxes.

(Tr. (Aug. 2, 2016)).

Finally, as discussed in more detail below, the tax returns indicate that Plaintiff had income beyond the income earned from Now Courier, which substantially undermines his repeated averments that he was not permitted to work for anyone else:

   *1210 Q: So your accountant prepared a profit or loss for a sole proprietor for you which indicates $31,483 in gross receipts. Is that the total income you made for 2012?

   A: If it says that there it has to be that.

   Q: Since, Mr. Bonet, Mr. Mola only paid you $26,101.65 where was the rest of the money earned?

   A: Look them up in the taxes they have to be there.

   Q: So there is no evidence of where you earned the additional money that is indicated on your tax return?

   A: There has to be because my accountant is not going to include an amount of money I do not have.

*Id.*

### 3. Plaintiff's Bank Records

Plaintiff's bank records, which were also introduced into evidence at trial, similarly cut against Plaintiff's contention that he was an employee. (Def. Ex. D, E). When asked at trial whether he was able to work for anyone else while working for Defendants, Plaintiff stated that he could not, and therefore was economically dependent on Defendants. Yet Plaintiff's bank records, as elicited at trial, contain multiple deposits totaling over $45,000 in 2013, despite the fact that Plaintiff stated at trial that (1) he only earned $21,000 in 2013 from Now Courier and (2) he deposited "almost none" of the Now Courier payment checks into his account. (Tr. (Aug. 2, 2016)). As

was the case at his deposition, when asked about certain deposits at trial, Plaintiff was unable to explain where this money came from:

   Q: Mr. Bonet I am going to ask you specifically about some deposits you made in 2013. In January your first deposit was $250 on January 7th. Is that money you earned from Now Courier?

   A: Possibly.

   Q: There was another deposit for ... $300 on January 22nd. Is that another deposit you made from Now Courier?

   A: Possibly.

   Q: According to the record sir you were paid on March 5th, $1017 by Now Courier. Did you deposit that money?

   A: I don't remember.

   Q: The next payment Now Courier made was March 18th another $1,063. Did you deposit that money?

   A: I don't remember.

   Q: According to your bank statements you deposited $ 2,362.60 on March 14th of 2013 with Now Courier not giving you any money. Where did that money come from?

   A: I don't remember.

(Tr. (Aug. 2, 2016)).

### b. Plaintiff's Testimony at Trial

[10] In addition to the evidence introduced at trial, Plaintiff himself testified about the many aspects of his role at Now Courier that were consistent with him being an independent contractor and evidenced his understanding that he was, in fact, hired as an independent contractor by Defendants. For example, after testifying that (1) he agreed his compensation for his work with Now Courier was "70 percent of the trips plus the extras," (2) he paid his own truck insurance and claimed the same on his taxes; (3) he paid for his own gasoline for his trips on behalf of the Defendants; and (4) he had to have his

own vehicle to work for defendants, Plaintiff went on to explain:

> Q: Now Mr. Bonet what is your understanding of what it is to be an independent contractor?
>
> A: Everything that we have spoken of here: the insurance itself, to pay for **\*1211** the gasoline, receive 70 percent of all the trips, plus the extras.
>
> Q: Sir, ... I am asking what it was that you walked away from [the meeting with Alexander Mola] with your understanding of what it meant to be an independent contractor?
>
> A: To be an independent contractor is to get 70 percent of all trips plus the extras. And I repeat everything that has been said before: to have your own van, to have your own insurance, to pay for the gasoline. I remind you once again that it was not the first time that I worked as an independent contractor.

(Tr. (Aug. 2, 2016)).

Additionally, as noted by the Court on the record at trial, the only testimony given by Plaintiff regarding his discussions with Defendant Mola about being an employee were those where Plaintiff asked to be an employee and Defendant Mola declined his request:

> Q: And you have ever complained about being an independent contractor to Alex Mola?
>
> A: Yes several times I asked him—for him to pay me a fixed salary per week.
>
> Q: And when did you first ask him that?
>
> A: It must have been around 2013 because he really paid me very badly.

(Tr. (Aug. 2, 2016)).

In stark contrast with the evidence described above, the only evidence adduced at trial that supports Plaintiff's contention that he was an employee were his conclusory statements about his work for Defendants—he testified that he didn't think he was an independent contractor "[b]ecause I could not have another job, I could not work for other people. I depended fully on the company, I could not choose work. And I had to spend the time he would

indicate to me to be with the company day by day." (Tr. (Aug. 2, 2016)).

The Court finds that this testimony is insufficient to create a legitimate legal basis for concluding that Plaintiff was an employee of Defendants. Plaintiff's repeated assertion that he wanted to be an employee cannot overcome the overwhelming evidence—supported by all of the facts adduced at trial—that indicate he was an independent contractor not covered by the FLSA's overtime provisions. Accordingly, the Court finds that no reasonable jury could conclude that this testimony sufficiently established that Plaintiff was an employee while working for Now Courier.

### C. Absence of proof on damages

**[11]** The Court also notes that Plaintiff adduced no evidence at trial to support the central tenet of his overtime claim, namely Plaintiff's contention that he worked more than 40 hours per week while working as a driver for Defendants. Even Plaintiff's own testimony on this issue failed to form an adequate basis for this element of his claim:

> Q: You claimed you worked 60 hours were there ever weeks you could have worked less?
>
> A: Yes that too. That is true, yes.
>
> Q: Could there ever have been a week up worked under 40?
>
> A: Yes that too.
>
> Q: Were there ever days there was not any business?
>
> A: There were several times when Alex did not give me work.
>
> Q: Approximately how often?
>
> A: That was not often it was very little, but there were occasions it did happen.
>
> Q: What about when your van was broken?
>
> A: I had no work—only expenses.
>
> **\*1212** Q: And were there any weeks you worked more than 60 hours?
>
> A: Possibly.

Bonet v. Now Courier, Inc., 203 F.Supp.3d 1195 (2016)
95 Fed.R.Serv.3d 654

(Tr. (Aug. 2, 2016)). There is a similar dearth of evidence regarding the minimum wage value that should be assigned in computing the amount of overtime due. When asked at trial, counsel for Plaintiff was unable to articulate any mathematical basis to calculate unpaid overtime wages. Thus, even if the Plaintiff had put forth sufficient evidence to prove that he was a covered employee under the FLSA and the jury had rendered a verdict in his favor, the profit-sharing arrangement to which Plaintiff and Defendants agreed would leave the Court with no logically sound, factually grounded, or legally cognizable means of calculating damages. [11]

## II. CONCLUSION

For the reasons stated above and by the Court at trial on August 3, 2016, it is **ORDERED AND ADJUDGED** that Defendants' *ore tenus* motions for dismissal as a sanction under Rule 41 Federal Rules of Civil Procedure and for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure are **GRANTED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 24th day of August 2016.

**All Citations**

203 F.Supp.3d 1195, 95 Fed.R.Serv.3d 654

Footnotes

1   As more fully laid out in the Court's July 26, 2016 order (DE 101), Plaintiff raised procedural objections in a footnote to the joint pretrial stipulation (DE 82)—filed on June 16, 2016—regarding the sufficiency of Defendants' answer in this case. Plaintiff then moved, on July 22, 2016, to preclude Defendants from arguing that Plaintiff was an independent contractor at trial because of their failure to file a formal answer to Plaintiff's amended complaint. (DE 98). The same day, Defendants moved to file an answer out of time. (DE 97). The Court denied both Parties' requests. The Court found that Plaintiff had suffered no prejudice from the alleged procedural defect—briefed only a week before trial—since both Parties were "on full and fair notice of the central issues of fact in this litigation" and "had ample opportunity to develop the record on each of th[ose] outstanding issues." (DE 101 at 4). *See Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 763 (11th Cir.1995)(finding that permitting amendment four days before a pretrial conference was not an abuse of discretion because opposing party had been on notice of the challenge since the initial stages of the litigation); 5 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1286 (3d ed. 2016) ("[o]ne of the most important objectives of the federal rules ... [is] that lawsuits should be determined on their merits and according to the dictates of justice, rather than in terms of whether or not the averments in the paper pleadings have been artfully or inartfully drawn").

2   At one point during defense counsel's questioning regarding multiple unexplained multi-thousand dollar deposits, Plaintiff glibly responded, "It must have been a gift from the Holy Kings, the three kings that came on January 6[th], because I can't remember." Deposition of Edgardo Bonet ("Bonet Depo"), DE 58-1 at 86: 22-24.

3   This Order references trial transcripts, which were obtained from the Court Reporter. Because the transcripts obtained by the Court were excerpted, pagination and line numbers are not included. Additionally, non-substantive changes, such as punctuation and capitalization, have been made to the rough transcripts to aid in comprehension.

4   Not only did Plaintiff state that he had no knowledge about the content of his tax returns, but he also stated that he does not believe that he has to sign his tax returns—in order to make their contents his responsibility under penalty of perjury—before they are filed with the IRS.

5   In his opening, Plaintiff's counsel proffered this settlement as an explanation for the unidentified funds in Plaintiff's bank account, which directly contradicted Plaintiff's repeated contentions during his deposition that he did not remember the source of any of the thousands of dollars in deposits that did not correspond to payments by Defendants.

6   To avoid any misunderstanding, upon resuming the proceedings, the Court confirmed Plaintiff's understanding of the Court's instruction with both Plaintiff and his counsel:
    THE COURT: So Ms. Sanders will read the last question into the record again. How did you record this and Mr. Sheskin, Ms. Morgado you told Mr. Bonet how to appropriately answer that and Mr. Bonet will move on.
    PLAINTIFF'S COUNSEL: And he wrote it down. Let's make sure Mr. Bonet is clear that the answer is he wrote it down.
    THE COURT: You understand that?
    PLAINTIFF: Yes, I understood.
    THE COURT: Very good. Bring in the jury, please.

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Benet v. Now Courier, Inc., 209 F.Supp.3d 1355 (2016)
95 Fed.R.Serv.3d 654

(Tr. (Aug. 2, 2016)). But these assurances were to no avail. When the jury returned and the question was read back —"How did you record [the miles included in the car and truck expenses claimed on your taxes] sir?"—instead of stating "I wrote it down" as agreed, Plaintiff stated, "[i]n the personal records I have recorded all the miles I have used from the first day to the last day I worked with Alex Mola." *Id.*

7    The Court notes again that Plaintiff's arguments about "diminished capacity" were raised for the first time on the third day of trial in response to the Court's threat of dismissal as a sanction. As stated on the record, the Court has been presented with no evidence, medical or otherwise, that supports this contention.

8    The Court notes that, at trial, Defendant Mola repeatedly denied ever having any employees and offered no other facts or statements that could support Plaintiff's contention that he was an employee and not an independent contractor. (*See* Tr. (Aug. 1, 2016); Tr. (Aug. 2, 2016)). As such, Mr. Mola's testimony is not discussed in this Order.

9    These travel logs are the sheets that Plaintiff submitted to Defendants while working as a driver, which were maintained by Defendants to record Plaintiff's jobs and waiting time. The travel logs, turned over by Defendants during discovery, are distinct from the travel notebooks that were excluded at trial.

10    As the Court acknowledged at summary judgment, the labels of the parties are not conclusive in determining Plaintiff's status. Still, the Court finds that the perception of the Parties—particularly Plaintiff—is informative in evaluating the true "economic reality" of the relationship at issue.

11    As noted in the Court's order on summary Judgment, this issue relating to the damages calculation has been problematic since Plaintiff filed his complaint. (*See* DE 75 at 5 ("No explanation was given as to why Plaintiff used different methods for calculating his hourly rate for the two periods [of his employment with Defendants], and Plaintiff did not (nor has he ever) disclose the manner in which he calculated those damages or make the documents upon which his calculations are presumably based available for inspection and copying.")).

---

**End of Document**          © 2017 Thomson Reuters. No claim to original U.S. Government Works.