UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20186-CIV-JEM

GLORIDELFA BARRIOS and all others          )
similarly situated under 29 U.S.C. 216(b), )
                                           )
               Plaintiffs,                 )
        vs.                                )
                                           )
SOLASI ACCOUNTING & TAX ADVICE & )
DESIGN OF THE WORDS IN DARK BLUE )
AT LEFT SIDE HAS A CIRCLE COLORED )
BLUE, PURPLE AND GREEN LIGHT a/k/a )
SOLASI, et al.                             )
                                           )
               Defendants.                 )
_____ )

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**[1]

COMES NOW the Plaintiff, by and through undersigned counsel, pursuant to

Fed.R.Civ.P. Rule 56 and SDLR 7.5, and moves for summary judgment, and in support thereof

states as follows:

1.  This matter sounds under the Fair Labor Standards Act ("FLSA" or the "Act") for unpaid

overtime and minimum wages 29 U.S.C. §§ 201-216.[2]

---

[1] Said Motion is timely as Plaintiff timely moved for an extension of time. *See,* [DE68].

[2] As per Plaintiff's Notice of Pending Motions [DE49], Plaintiff's Motion for Leave to File and Serve First Amended Complaint [DE25] is pending and ripe for review. In addition to her FLSA claims, Plaintiff has a claim for minimum wage violations under Florida State Law, Florida Statute § 448.110 and Plaintiff's Motion [DE25] seeks to add said claims. To the extent Plaintiff's claim for Florida Minimum Wage overlaps Plaintiff's claim for Federal Minimum Wage payments, Plaintiff is claiming the higher of the two applicable rates. *See also, Touzout v. Am. Best Car Rental KF Corp.,* 15-61767-CV, 2017 WL 2541225, at *1 (S.D. Fla. June 12, 2017)( "pursuant to 29 U.S.C. Section 218, part of the FLSA, employers must comply with any state law that establishes a minimum wage higher than the minimum wage under the FLSA. 29 U.S.C § 218(a)."). "Furthermore, courts in the Southern District of Florida have generally used the Florida minimum wage to calculate damages in cases brought under the FLSA. *Isaula v. Chicago Restaurant Group, LLC*, No. 13–CV–24387–JLK, 2014 WL 3477917, (S.D. Fla. Jul.

2.   Plaintiff moves for Summary Judgment and asks the Court to find that: (a) FLSA enterprise coverage/subject matter jurisdiction exists for the relevant time period; (b) Plaintiff was Defendants' "employee" under the Act and not an independent contractor; (c) the individual Defendant, SOPHIA LACAYO ("LACAYO"), was Plaintiff's individual FLSA "employer" as a matter of law; (d) the executive/supervisory exemption[3] is not applicable in this matter and, thus, Plaintiff is not an exempt employee as a matter of law; (e) liability has been established, and, hence, under the prevailing law, in light of the facts in this case, the Jury only needs to determine the amount of damages.

3.   Therefore, Summary Judgment should be granted in Plaintiff's favor as set forth *supra*.

## MEMORANDUM OF LAW

### Summary Judgment Standard.

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.*, 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp.*, *et al.*, 912 F.2d at 1383.

---

11, 2014); *Ortiz v. Santuli Corp.*, No. 08–20218–Civ, 2010 WL 2926517 (S.D. Fla. Jul. 23, 2010); *Roldan v. Pure Air Solutions, Inc.*, No. 07–22203–Civ, 2009 WL 198911 (S.D. Fla. Jan. 27, 2009)." *See also*, 29 C.F.R. § 541.4.

[3] Defendants have not filed their Answer and Affirmative Defenses as their Motion to Dismiss Complaint [DE11] is pending and ripe for review. Through the course of the litigation, Defendants generally raise as an affirmative defense that Plaintiff is an exempt employee but do not specifically raise the executive/supervisory exemption. In an abundance of caution, Plaintiff herein addresses the executive/supervisory exemption. Defendants are unable to maintain a position that Plaintiff was an exempt employee while simultaneously contending Plaintiff was an independent contractor as they are in direct contravention with each other.

*See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

### A. FLSA Enterprise Coverage/Subject Matter Jurisdiction Exists for the Relevant Time Period.

29 U.S.C. 203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." As to the interstate commerce prong of enterprise coverage, on 8/31/10 the Eleventh Circuit rendered a decision in the consolidated matter of *Polycarpe et al. v. E & S Landscaping*, 616 F.3d 1217 (11th Cir. 2010). *Polycarpe* clarified that in this Circuit, it is now of no consequence if the goods have "come to rest"--there is no continuity requirement, and enterprise coverage is triggered so long as the employees have, pursuant to 29 U.S.C. Section 203(s)(1)(A)(i), handled, sold or worked with goods "that have been moved in or produced for commerce."  616 F.3d, at *5-6 (LEXIS pagination).  The *Polycarpe* Court stated that "we must vacate the judgment for the Defendant if there is a question about where the "goods" or "materials" were produced or where they have moved. The district courts will need to make some further decisions about the interstate history of the items in these cases."  *Id*. Consequently, from whatever prism *Polycarpe* is analyzed, it is clear, for example, that a defendant-employer can no longer argue that the employees' handling etc. of the goods or materials, that were merely manufactured outside of Florida (when the $500,000 threshold is met), is not sufficient interstate commerce as a matter of law.

3

Defendants, by and through their counsel, have stipulated that the Corporate Defendants were covered under the FLSA as enterprises for the years 2014 through to and including 2017, as to both prongs (gross annual revenue and interstate commerce). As such, there is no genuine issue of material fact as to both the $500,000 and interstate commerce prongs.

As per Defendants' Amended Responses to Plaintiff's Interrogatories, specifically No. 4, Defendants admitted that the Corporate Defendants grossed $500,000 or more during the years 2014 through to and including 2016. *See,* Exhibit "A" - Defendants' Amended Response to Plaintiff's Interrogatories; *See also,* Def. Depo. Trans. P.9, L.12-P.11, L.17; P.24, L.20-23; P.26, L.21-24; P.27, L.9-21. The Corporate Defendants are on track for making $500,000 annual income for the year 2017. Def. Depo. Trans. P.24, L.24-P.25, L.18. Further, Defendants stipulated to interstate commerce. *See,* Exhibit "B" – Conferral Email. As such, no genuine issue of material fact exists as to either prong of FLSA enterprise coverage/subject-matter jurisdiction for the relevant time period (2014-2017) as a matter of law.

**B.** **Plaintiff Was An "Employee" Under the Act And Not An Independent Contractors.**

Plaintiff was not an independent contractor during the relevant time period, but rather was as "employee" as defined the FLSA and FMWA. An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d).  An employment relationship is decided by applying the "economic realties test." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (D. Fla 2001).   In applying the "economic realities test," the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged employee's investment in

4

equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.  *See, Santelices, supra.*

The Corporate Defendants deal with tax preparation, personal and corporation tax, federal and state taxes, keep accounting for businesses, do accounting for low-income people, sell health insurance, have a notary on site, and fill out immigration papers. Def. Depo. Trans. P.22, L.4-23; *See also,* Pl.'s Aff. ¶20. **Plaintiff's tasks as set forth herein were for the purpose of maximizing the value of Defendants' business through organizing and assisting Defendant Lacayo in any way she requested.** Pl.'s Aff. ¶20. Plaintiff worked for Defendants from on or about August 1, 2013 through on or about January 23, 2017. Pl.'s Aff. ¶8; *See also,* Def. Depo. Trans. P.39, L.20-25; P.42, L.21-23. Plaintiff was hired by Defendants as a receptionist, which included without limitation customer service, answering calls, serving coffee, receiving mail, cleaning the office, and the like. Def. Depo. Trans. P.47, L.17-21; P.50, L.1-P.51, L.1. On or about September 2014, Plaintiff was given the assistant position, which included without limitation, assisting Defendant Lacayo directly, checking the mail, cleaning the office, and customer service. *Id.*

The facts in this case show that Plaintiff was never an independent contractor, but rather was always Defendants' "employee" pursuant to the economic realities test *infra*. The facts show that Defendants, controlled the manner in which Plaintiff performed her work for Defendants.

Plaintiff's job duties included, but were not limited to; cleaning the office and organizing all employees' stations (including cleaning windows, sweep/mop floors, sterilize desks). Pl.'s Aff. ¶11. Plaintiff was also responsible for doing the inventory of supplies and ordering supplies

for the office using a company credit card. *Id.* Plaintiff would set and confirm appointments, schedule classes to take place at the office, assist Defendant Lacayo as she taught the classes to the attendee's, attend to client's needs and issues, and help prepare forms and documents for clients' cases. *Id.* Plaintiff would travel to the Courthouse to pick up extra self help divorce packages and child support packages for Defendants' customers. *Id.* In addition to Plaintiff's regular daily duties, Defendant Lacayo would often direct Plaintiff to drive her to the doctor's office, conduct marketing for the office, deposit company checks into the company account, and hand out advertising flyers and posters on the street. Pl.'s Aff. ¶12. **The work that Plaintiff did as described herein was for Defendants' business and Plaintiff's tasks performed were central and integral in relation to their business.** Pl.'s Aff. ¶20.

Under the economic realities test *supra*, Plaintiff was an employee (not an independent contractor) due to the nature and degree of control of the Plaintiff by the Defendants. *See, prong 1 of Santelices, supra.* Defendants controlled the nature and degree of work performed by Plaintiff. Pl.'s Aff. ¶4. Defendant Lacayo would go around, would pass through, observe, and supervise the quality of Plaintiff's work and supervise Plaintiff's work in general. Pl.'s Aff. ¶14. Defendants provided Plaintiff with a work email address and Defendant Lacayo would require Plaintiff to email her, using Plaintiff's work email address, when Plaintiff first arrived at work each morning and when Plaintiff left work each evening.[4] *Id.* Plaintiff would often receive emails from Defendant Lacayo reviewing the quality of Plaintiff's work. *Id.* Defendant Lacayo would discipline Plaintiff by docking Plaintiff's pay or suspending Plaintiff from work when she did not believe the quality of Plaintiff's work met her standards. *Id.* Additionally Defendant

---

[4] Said emails are responsive to Plaintiff's Request for Production served on Defendants as well as part of Defendants' Rule 26 Disclosures. Despite conferral on this issue, Defendants have failed to provide Plaintiff with copies of said emails which only Defendants are able to access as it is their server.

Sofia Lacayo emailed Plaintiff daily tasks or daily instructions either early in the morning or the previous evening. *Id.* During the relevant time period, Defendant Lacayo or Defendants, by and through their agent, Defendants' manager Thanya Lacayo, provided Plaintiff with Plaintiff's daily tasks each morning. Pl.'s Aff. ¶15. Throughout the day these tasks would constantly be changed or adjusted by Defendant Lacayo or Defendants, by and through their agent, Defendants' manager Thanya Lacayo, based on their needs each day. *Id.* Plaintiff was not required to have any special skills and/or any special training or classes to obtain the position she had with Defendants. Pl.'s Aff. ¶13. During the relevant time period, Plaintiff was not required to generate profit or loss through performance of managerial skills and Plaintiff did not have the opportunity in her positions to increase/maximize her income. Pl.'s Aff. ¶19. Under prongs (1) and (5) of *Santelices supra*, such evidence shows Plaintiff was an FLSA employee and that the employer/Defendants exercised control over Plaintiff.

Upon analysis of Plaintiff's bi-weekly pay stubs and Plaintiff's best recollection, on or about January 1, 2014 through on or about August 2014, Plaintiff was paid approximately $10.00 per hour. Pl.'s Aff. ¶ 9; *See also,* Def. Depo. Trans. P.47, L.17-21; P.50, L.1-P.51, L.1.From on or about September 2014 through on or about August 2015, Plaintiff was paid approximately $12.00 per hour.*Id.; See also,* Def. Depo. Trans. P.51, L.14-25. From on or about September 2015 through on or about May 2016, Plaintiff was paid approximately $16.00 per hour. *Id.* From on or about June 2016, through on or about November 9, 2016, Plaintiff was paid approximately $18.00 per hour. *Id.* Such shows that Defendants are actually the funding source from which Plaintiff was paid. All of the above facts show Plaintiff was an employee, who was dependent on Defendants' business economically. Under the economic realities test, such demonstrates Plaintiff was an employee as  she was economically dependent on the Defendants. *See Apolinar*

*infra.*

In *Jeanneret v. Aron's East Coast Towing*, 2002 U.S. App. Lexis 27699 (11th Cir. 2002), the Appellate Court affirmed the District Court's definition of an employer and employee under the FLSA. "Section 203(d) of the FLSA defines an "employer" as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' It further defines 'employee' as 'any individual employed by and employer.'" *Id*. at 6. "To 'employ' means 'to suffer or permit to work." *Id.* The court states that a determination of employment status under the FLSA is a question of federal law. *Id.* Whether an employment relationship exits under the FLSA must be judged by the 'economic realities' of the individual case and not by traditional common-law principles. *Id.* Furthermore, economic dependence determines the employer/employee relationship under the Act. See, *Apolinar Martinez-Mendoza et.al. v. Champion International Corporation*, 16 Fla. L. Weekly Fed. C945, (11th Cir. 2003). The Eleventh Circuit stated at HN13 that "in entertaining and assessing the evidence relevant to the inquiry called for by a given factor, the question the district court must ask itself is whether such evidence, considered as a whole, supports (or fails to support) the laborer's claim that he is economically dependent on the putative employer."

Other than the first month of Plaintiff's employment with Defendants, Plaintiff had no other job while employed by Defendants and was completely economically dependent on the Defendants for her livelihood. Pl.'s Aff. ¶5. Plaintiff was required by Defendants to wear a uniform which included a scarf, ivory colored long sleeve button down shirt, and black jacket, and polo shirt and sweater with company logo. Pl.'s Aff. ¶ 6. Plaintiff was not required to have any special skills and/or any special training or classes to obtain the position she had with Defendants. Pl.'s Aff. ¶13. During the relevant time period, Plaintiff was not required to generate

profit or loss through performance of managerial skills and Plaintiff did not have the opportunity in her positions to increase/maximize her income. Pl.'s Aff. ¶19.

Defendants invested in the equipment and materials used by Plaintiff to perform the work required of her by Defendants. During Plaintiff's employment, Plaintiff regularly used equipment and tools that belonged to Defendants, all of which were necessary to complete Plaintiff's duties: calendar/agenda book, personalized business cards with my name and company logo, electronics and tools including but not limited to Dell computers, telephones, fax, printers, scanners, pens, paper, highlighters, staplers, paperclips, rubber bands, scissors, sharpies, desks, chairs, legal pads, post-its, calculators, file folders, hole punchers, posters and flyers and other supplies that helped Plaintiff complete her job duties (i.e. electronic programs –Microsoft Office, QuickBooks, Pro Series – cleaning supplies - Windex, pine sol, paper towels, Clorox, soap, vacuum, mop, water bucket, dustpan, trash bags – credit card machines, projectors, projection screens, etc.). Pl.'s Aff. ¶7. Defendants also provided Plaintiff with a work email and work Skype access. *Id.* Plaintiff would use Defendants' office supplies to complete her work (i.e. pens, pencils, etc.) as well as Defendants' printers, paper, computers, and other office equipment. Def. Depo. Trans. P.74, L.7-15. Under prongs (2) of *Santelices supra*, such evidence shows Plaintiff did not have opportunities for profit or loss depending on her managerial skills as Plaintiff was not in a manager role. Plaintiff was economically dependent on the employer under *Martinez-Mendoza v. Champion Int'l Corp., infra; See also* [DE60-4, ¶¶ 27-30].

The case law discussed below demonstrates that Plaintiff's tax filing status is not relevant, and Defendants chose to provide her with tax forms which required her to file as an independent contractor to comply with IRS mandates. In *Harrell v. Diamond A Entertainment, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997)(emphasis added), the Middle District of Florida stated

that "Defendant's fourth and fifth additional factors (characterization for **tax** purposes and the provision of employee benefits) **are not relevant**. The Court should decide such factors in the context of the broad "suffer or permit to work" definition of employment contained in the FLSA. *See*, *Jeanneret supra,* 2002 WL 32114470, at \*2.  To clarify for example, even if Defendants would argue cases such as *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989), such line of case law turns on the much narrower common law definition of employment, a definition which was subsequently found not applicable to the FLSA in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 1350, 117 L. Ed. 2d 581 (1992) (citing *Rutherford Food Corp.*, 331 U.S. at 728, 67 S. Ct. at 1475)."

More recently, this Court also held that "[t]he District courts have found that the label workers used with respect to the IRS is irrelevant in considering whether the person was an independent contractor. *Clincy v. Galardi S. Enterprises, Inc.,* 808 F.Supp.2d 1326, 1349 (N.D.Ga.2011) (Finding that Plaintiffs' holding themselves out to the IRS as independent contractors does not make them independent contractors for FLSA purposes.)"  *Gordilis v. Ocean Drive Limousines, Inc.*, No. 12-CV-24358-JLK, 2014 WL 2214289, at \*3 (S.D. Fla. May 28, 2014).  Thus, in *Gordilis* this Court found that "[t]he factors governing "economically dependent" do not ponder personal tax returns." *Id.* at \*4.

While Plaintiff was always paid a 1099 tax form this is not indicative of Plaintiff's status as an employee as all of Defendants' workforce were paid in the same manner; Defendants' payment practices changed on or about the year 2017 and all employee started being paid with W-2 tax forms. Def. Depo. Trans. P.41, L.19-23.

Therefore, the facts set forth above regarding the several prongs under *Santelices supra,*

establish that the Plaintiffs were employees (not independent contractor) of Defendants, as a matter of law.

**C. <u>The Individual Defendant Was Plaintiff's FLSA Employer As A Matter Of Law.</u>**

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973). "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511. Financial control over a corporation is a significant factor in determining "employer" status. *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991).

**Defendant Lacayo was the person that ran the day-to-day operation of the business for the years 2014 through to and including 2017. Def. Depo. Trans. P.29, L.2-15.** The individual Defendant Sophia Lacayo ("Lacayo") is listed as the sole corporate officer of the

Corporate Defendants, specifically the President, and is 100% owner of same. Def. Depo. Trans. P.14, L.23-P15, L.5; P.15,L.23-P.16, L.4; Pl.'s Aff. ¶4. Lacayo is the sole signator on the Corporate Defendants' bank account. Def. Depo. Trans. P.17, L.24-P.18, L.3; Pl.'s Aff. ¶4. If the Corporate Defendants are low on funds, Defendant Lacayo makes up the deficiency by utilizing her own personal funds and loans it to the Corporate Defendants during the years 2014 through to and including 2017.Def. Depo. Trans. P.19, L.11-P.20, L.9. Defendant Lacayo was the person who had the most authority to hire and fire employees for the Corporate Defendants for the years 2014 through to and including 2017. Def. Depo. Trans. P.27, L.22-P.28, L.14. Defendant Lacayo was also the person who had the most authority with regards to setting wages for the years 2014 through to and including 2017. Def. Depo. Trans. P.19-P.29, L1. Defendant Lacayo was the person who signed the employees' wages and authorized payment of same; Defendant Lacayo was the sole person authorized to sign checks on behalf of the Corporate Defendants. Def. Depo. Trans. P.29, L.19-P.30, L.8. In addition to Plaintiff's regular daily duties, Defendant Lacayo would often direct Plaintiff to drive her to the doctor's office, conduct marketing for the office, deposit company checks into the company account, and hand out advertising flyers and posters on the street. Pl.'s Aff. ¶12.

Defendant Lacayo would go around, would pass through, observe, and supervise the quality of Plaintiff's work and supervise Plaintiff's work in general. Pl.'s Aff. ¶14.  Defendants provided Plaintiff with a work email address and Defendant Lacayo would require Plaintiff to email her, using Plaintiff's work email address, when Plaintiff first arrived at work each morning and when Plaintiff left work each evening.[5] *Id.*  Plaintiff would often receive emails from

---

[5] Said emails are responsive to Plaintiff's Request for Production served on Defendants as well as part of Defendants' Rule 26 Disclosures. Despite conferral on this issue, Defendants have

Defendant Lacayo reviewing the quality of Plaintiff's work. *Id.* Defendant Lacayo would discipline Plaintiff by docking Plaintiff's pay or suspending Plaintiff from work when she did not believe the quality of Plaintiff's work met her standards. *Id.* Additionally Defendant Sofia Lacayo emailed Plaintiff daily tasks or daily instructions either early in the morning or the previous evening. *Id.*  During the relevant time period, Defendant Lacayo or Defendants, by and through their agent, Defendants' manager Thanya Lacayo, provided Plaintiff with Plaintiff's daily tasks each morning. Pl.'s Aff. ¶15. Throughout the day these tasks would constantly be changed or adjusted by Defendant Lacayo or Defendants, by and through their agent, Defendants' manager Thanya Lacayo, based on their needs each day. *Id.*

Such facts, including with respect to ownership and operational control, demonstrate that Defendant LACAYO was Plaintiff's FLSA employer as a matter of law. Under the law set forth *supra,* Defendants were Plaintiff's individual FLSA employers.

### D. <u>Defendants Have The Burden To Prove The Exemption Is Applicable In This Matter Under A Clear And Affirmative Evidence Standard And The Exemption Is Construed Strictly Against The Defendants-Employers.</u>

Under the FLSA, a covered employee, must receive overtime pay at a rate not less than one and one-half times the regular rate at which he is employed if he works a workweek longer than (40) hours. 29 U.S.C. §207(a)(1). The overtime wage requirement does not apply to an employee employed in a bona fide executive.. *Id.* at §213(a)(a). Defendants have argued that Plaintiff is not entitled to overtime because she falls under the "executive" exemption. Exemptions to the FLSA are to be narrowly construed against the employer who asserts them. *Walter v. American Coach Lines of Miami, Inc.,*569 F.Supp. 2d 1270 (S.D. Fla. 2008).

---

failed to provide Plaintiff with copies of said emails which only Defendants are able to access as it is their server.

The employer carries the burden of proving an exemption, *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004), and in determining whether an exemption exists, the overtime provisions of Section 207 are narrowly construed against the employer. *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 804 (11th Cir. 1991); *see also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir. 1994). The Eleventh Circuit has long held that exemptions under the Fair Labor Standards Act are to be construed strictly and narrowly in favor of coverage of employees, affording maximum coverage to the employees due to the broad remedial purpose behind the Act. *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361 (11th Cir. 1997). Presumably, this is why the Eleventh Circuit articulated the rule in *Klinedinst v. Swift Investments, Inc.,* 260 F.3d 1251 (11th Cir. 2001) that employers must prove the applicability of FLSA exemptions by "clear and affirmative" evidence. Consequently, the said burden is on Defendant and the clear and affirmative evidence standard applies to all of the below-referenced exemptions.

### The Executive/Supervisory Exemption Is Not Applicable In This Matter.

An employee's job title is irrelevant in determining whether he or she is exempt as an "executive" under the FLSA. Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1075 (1st Cir. 1995). 29 C.F.R. §541.2 expressly states: "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." An employer must be able to show that each exempt executive employee meets every requirement of the executive exemption test. Pezzillo v. Gen. Tel. & Electron. Inform. Sys. Inc., 414 F. Supp. 1257 (M.D. Tenn. 1976). An employee is subject to the executive exemption under the FLSA if the employer proves: (1) the employee earns at least

$455.00 per week, (2) the employee's <u>primary duty</u> consists of the management of an enterprise or of a department thereof, (3) that the employee customarily and regularly directs the work of two or more other employees, and (4) the employee has authority to hire or to fire other employees. 29 C.F.R. §541.100(a).

The first element requires that Plaintiff be paid a "salary" of $455 a week. 29 C.F.R. 541.100 (a)(1) "The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee (1) Compensated on a salary basis at a rate of not less than $455 per week. Said provision requires that Plaintiff be paid on a salary basis and not on an hourly basis. *See,* 29 C.F.R. 541.602(a).

**In the case at bar it is undisputed that Plaintiff was being paid an hourly rate for work performed for Defendants and was not paid by Defendants on a salaried basis.** Pl.'s Aff. ¶ 9; *See also,* Def. Depo. Trans. P.47, L.17-21; P.50, L.1-P.51, L.1; P.51, L.14-25. The record is void of any evidence that Plaintiff was ever paid on a salaried basis.

The following work has been considered to be exempt when performed by an employee who manages a department:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. 541.102.  [R, 1-35].

"The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. §541.700(b).

When an employee does not spend more than 50% of the work day engaged in managerial duties, courts have used four other pertinent factors in determining if management is nevertheless his primary duty:

> (1) The relative importance of managerial duties as compared with other types of duties.
> (2) The frequency with which the employee exercises discretionary powers.
> (3) His relative freedom from supervision.
> (4) The relationship between his salary and the wages paid other employees for the   kind of non-exempt work performed by the supervisor.

29 C.F.R. 541.103 (Revised   8/23/04). One way to prove that management was Plaintiff's primary duty is to establish that she spent 50 percent of her time performing management functions.  According to 29 C.F.R. 541.700(b), generally speaking, an employee who spends over 50 percent of his time in management would have management as her primary duty. An employee who does not spend more than 50 percent of the work day engaged in managerial duties, might nevertheless have management as her primary duty if the other factors support such a conclusion. 29 C.F.R. 541.700(b).   Such has not been proven by the defense in the instant

matter.  Whether a particular employee or group of employees has management as her primary duty must be based on all the facts in a particular case. 29 C.F.R. 541.700(a).

Plaintiff was hired by Defendants as a receptionist, which included without limitation customer service, answering calls, serving coffee, receiving mail, cleaning the office, and the like. Def. Depo. Trans. P.47, L.17-21; P.50, L.1-P.51, L.1. On or about September 2014, Plaintiff was given the assistant position, which included without limitation, assisting Defendant Lacayo directly, checking the mail, cleaning the office, and customer service. *Id.* Plaintiff's job duties included, but were not limited to; cleaning the office and organizing all employees' stations (including cleaning windows, sweep/mop floors, sterilize desks). Pl.'s Aff. ¶11. Plaintiff was also responsible for doing the inventory of supplies and ordering supplies for the office using a company credit card. *Id.* Plaintiff would set and confirm appointments, schedule classes to take place at the office, assist Defendant Lacayo as she taught the classes to the attendee's, attend to client's needs and issues, and help prepare forms and documents for clients' cases. *Id.* Plaintiff would travel to the Courthouse to pick up extra self help divorce packages and child support packages for Defendants' customers. *Id.* In addition to Plaintiff's regular daily duties, Defendant Lacayo would often direct Plaintiff to drive her to the doctor's office, conduct marketing for the office, deposit company checks into the company account, and hand out advertising flyers and posters on the street. Pl.'s Aff. ¶12. Defendant Lacayo would go around, would pass through, observe, and supervise the quality of Plaintiff's work and supervise Plaintiff's work in general. Pl.'s Aff. ¶14.

To customarily direct the work of two or more employees is a prerequisite for the executive exemption. See 29 C.F.R. 541.1 and 541.105.  Defendants cannot sufficiently demonstrate such as Plaintiff disputes same per the below. See *Secretary of Labor v. Daylight*

*Dairy Products, Inc.,* 779 F.2d 784 (1st Circuit 1985). Plaintiff did not have the authority to hire and/or fire employees and did not have the authority to negotiate employee's contracts. Def. Depo. Trans. P.58, L.16-P.59, L.4; P.61, L.13-15; *See also,* Pl.'s Aff. ¶16. If there were any disciplinary issues with regards to employees, Defendants' manager, Thanya Lacayo, was in charge of those issues and Plaintiff would witnesses Thanya Lacayo disciplining employees. Pl.'s Aff. ¶16. Any decision that had to be made was required to be addressed first with Defendant Lacayo, who had the ultimate decision power. *Id.*  Plaintiff did not have the authority to determine employees' wages and did not have the authority to determine the schedule that employees' worked. Def. Depo. Trans. P.59, L.14-P.25; *See also,* Pl.'s Aff. ¶16. Plaintiff did not have the authority to grant employees' requested absences and/or vacation time. Def. Depo. Trans. P.60, L.1-14. Plaintiff was required by Defendants to seek authorization prior to making any purchases for Defendants and Defendant Lacayo would have the final authorization with regards to whether something was purchased or not. Def. Depo. Trans. P.62, L. 10-16; *See also*, P.62, L.25-P.63, L.8. Plaintiff was not authorized to sign any employee checks on behalf of the Corporate Defendants. Def. Depo. Trans. P.62, L.17-19. During the relevant time period, Plaintiff never trained employees; never set or adjusted  their rates of pay and hours of work; never maintained production or sales records for use in supervision or control; never appraised employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; never handled employee complaints and grievances; never disciplined employees; never provided for the safety and security of the employees or the property; never planned or controlled the budget; and never monitored or implemented legal compliance measures. Pl.'s Aff. ¶17-18.

Plaintiff's primary duty was as Defendant Lacayo's personal assistant and Defendants' secretary during the relevant time period and did not involve executive authority. Under the stated case law above, there is no genuine issue as to Plaintiff's primary duty and, thus, Defendants are not entitled to the executive/supervisory exemption as a matter of law.

**E. <u>Liability Has Been Established.</u>**

As set forth in Plaintiff's material facts, Plaintiff was not paid in accordance with the law with regards to payment of her overtime wages when she worked more than (40) hours in a single week.

During the relevant time, Plaintiff worked during the tax season, January through April, Monday through to and including Saturday from approximately 7:00a.m. through to and including approximately 10:00/11:00 p.m., an average of between 94.5 hours a week. During non-tax season, May through December, Plaintiff worked Monday through to and including Saturday from approximately 7:00 a.m. through to and including approximately 5:00 p.m. and on occasion through and including approximately 6:00 p.m., an average of 60 hours per week. Pl.'s Aff. ¶8. Plaintiff received a thirty (30) minute lunch break daily, however Defendants would regularly and customarily interrupt same. *Id.; See also,* 29 CFR 785.19 Additionally, Defendants would dock approximately one (1) hour of pay for each day worked, for Plaintiff's alleged lunch break although she never received an uninterrupted break per the requirements of the applicable CFR. *Id.* During the relevant time period, Plaintiff was paid an occasional, minimal, substandard overtime payment of $8.00/hr., $9.00/hr., or $10.00/hr., and, therefore, Plaintiff was paid an occasional, minimal, substandard overtime payment of an average of $9.00/hr. Pl.'s Aff. ¶ 9. The Defendant Sophia Lacayo directed Plaintiff through email that

between the hours of 5 p.m. and 8 p.m. Plaintiff was to work only at the front desk. Pl.'s Aff.
¶11.

Plaintiff worked at least *some* overtime during the relevant time period for which
Defendants failed to pay Plaintiff at the applicable time-and-a-half overtime rate. Def. Depo.
Trans. P.52, L.5-P.53, L.17; P.64, L.16-23; P.68, L.2-11; P.69, L.3-P.70, L.13; *See also,* Def.
Depo. Trans. P.79, L.9-23; P.83, L.17.

Plaintiff was never paid according to the FLSA for hours worked over 40 hours in a week
and therefore claims the applicable overtime rate for each hour worked above 40 in a week.
Defendants do **<u>not</u>** offer into evidence any time records (as they do not posses any) that
controvert or rebut that Plaintiff worked the hours she claims or pay stubs reflecting the amount
Plaintiff received in compensation for work performed by her for Defendants.

During the course of her employment with Defendants, Plaintiff was not required to keep
track of her hours worked. Def. Depo. Trans. P.48, L.19-24; P.53, L.22-P.54, L.11; P.55, L.5;
*See also,* Pl.'s Aff. ¶10. The onus is on Defendants to keep accurate and complete time records
under *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), and moreover, there are
very specific records that must be kept pursuant to 29 CFR 516.2. Plaintiff in her affidavit, has
provided the Court with her best approximation as to the dates and times that she worked for
which she was not compensated pursuant to *Mt. Clemens Pottery Co*., particularly in light of
Defendants failure to record all hours worked by Plaintiff. Given the lack of time records,
Defendants are unable to overcome the burden that has shifted under *Mt. Clemens.* There is
FLSA coverage in this matter and Plaintiff was an "employee," and, thus, Defendants were
obligated to pay Plaintiff overtime wages. Thus, liability has been established and, therefore a
Jury only needs to determine the amount of damages.

**WHEREFORE,** Plaintiff respectfully requests that this court enter Summary Judgment against Defendants, jointly and severally, and find as a matter of law that (a) FLSA enterprise coverage/subject matter jurisdiction exists for the relevant time period; (b) Plaintiff was Defendants' "employee" under the Act and not an independent contractor; (c) the individual Defendant, SOPHIA LACAYO, was Plaintiff's individual FLSA "employer" as a matter of law; (d) the executive/supervisory exemption is not applicable in this matter and, thus, Plaintiff is not an exempt employee as a matter of law; (e) liability has been established, and, hence, under the prevailing law, in light of the facts in this case, the Jury only needs to determine the amount of damages.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah F. Jaff, Esq. ___
    Rivkah F. Jaff, Esquire
    Florida Bar No.: 107511

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT A TRUE AND CORRECT
COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 12/12/17 TO:**

**JOSHUA A. SAVAL, ESQ.
RICHARDS AND ASSOCIATES
232 ANDALUSIA AVENUE, SUITE 202
CORAL GABLES, FL 33134
PH: (305) 448-2228
EMAIL: JSAVAL@RGATTORNEYS.COM
BY:_____/s/ Rivkah F. Jaff_____
        RIVKAH F. JAFF, ESQ.**

21