## AFFIDAVIT OF GLORIDELFA BARRIOS

STATE OF FLORIDA           )
                           )     S.S.:
COUNTY OF MIAMI-DADE       )

1.  My name is GLORIDELFA BARRIOS I am over eighteen years of age; I reside in the United States, and I have personal knowledge of the matters set forth herein. I am mentally competent to sign this Affidavit and I do so freely, voluntarily, and pursuant to my own free will. I affirm that the contents of this Affidavit are true and correct and to the best of my belief.

2.  I affirm that this document was translated in Spanish and that I fully understood the contents of this Affidavit prior to executing same.

3.  I am a Plaintiff in the United State District Court, Southern District of Florida, *Gloridelfa Barrios. v. Solasi Accounting & Tax Advice & Design Of The Words In Dark Blue At Left Side Has A Circle Colored Blue, Purple And Green Light a/k/a Solasi, Lacayo Trade Group, Inc., Sophia Lacayo,* Case No.: 17-CV-20186-JEM.

4.  Defendant Sophia Lacayo is 100% owner of the business. Defendant Sophia Lacayo or manager Thanya Lacayo would sign my pay checks and the pay checks of other employees. Defendant Sophia Lacayo controlled the nature and degree of work I performed.

5.  After the first month of employment with Defendants, I had no other job while employed by the Defendants and I was completely economically dependent on the Defendants for my livelihood.

6.  I was required by Defendants to wear a uniform. The uniform included a scarf, ivory colored long sleeve button down shirt, and black jacket, and polo shirt and sweater with company logo

Page 1 of 7

 Gloridelfa Barrios

7. The Defendants provided me with the following, all of which were necessary to complete my duties: calendar/agenda book, personalized business cards with my name and company logo, electronics and tools including but not limited to Dell computers, telephones, fax, printers, scanners, pens, paper, highlighters, staplers, paperclips, rubber bands, scissors, sharpies, desks, chairs, legal pads, post its, calculators, file folders, hole punchers, posters and flyers and other supplies that helped me complete my tasks. Electronic programs including but not limited to Microsoft Office, QuickBooks, Pro Series and cleaning supplies, including but not limited to, Windex, pine sol, paper towels, Clorox, soap, vacuum, mop, water bucket, dustpan, trash bags, and other supplies that helped me complete my tasks, credit card machines, projectors, projection screens. Defendant also provided with a work email, and work skype access. Defendants gave me keys to the office and a business Visa debit card from Regents bank to order supplies.

8. I worked for Defendants as an assistant from on or about August 1, 2013 through on or about January 23, 2017. During the relevant time, I worked during the tax season, January through April, Monday through to and including Saturday from approximately 7:00a.m. through to and including approximately 10:00/11:00 p.m., an average of between 94.5 hours a week. During non-tax season, May through December, I would work Monday through to and including Saturday from approximately 7:00am through to and including approximately 5:00pm and on occasion through and including approximately 6:00 pm, an average of 60 hours per week. I received a thirty (30) minute lunch break daily, however Defendants would regularly and customarily interrupt my break. Additionally, Defendants would dock approximately one (1) hour of pay for each day worked, for my alleged lunch break although I never received an uninterrupted break.

_G.B_ Gloridelfa Barrios

9. Upon analysis of my bi-weekly pay stubs, and based on my best recollection, on or about January 1, 2014 through on or about August 2014, I was paid approximately $10.00 per hour. From on or about September 2014 through on or about August 2015, I was paid approximately $12.00 per hour. From on or about September 2015 through on or about May 2016, I was paid approximately 16.00 per hour. From on or about June 2016, through on or about November 9, 2016, I was paid approximately $18.00 per hour. During the relevant time period, I was paid an occasional, minimal, substandard overtime payment of $8.00/hr., $9.00/hr., or $10.00/hr., and, therefore, I was paid an occasional, minimal, substandard overtime payment of an average of $9.00/hr.

10. During the relevant time period, I was not required by Defendants to sign-in and/or to sign-out and/or to maintain records of the days and hours I was working. I never saw any records identifying the days that I worked and the rate payable to me. I have never signed off on any records which identify the days that I worked and the rate payable to me.

11. My job duties included, but were not limited to; cleaning the office and organizing all employees' stations (including cleaning windows, sweep/mop floors, sterilize desks). I was also responsible for supplies inventory and ordering supplies for the office using a company credit card. I would set and confirm appointments, schedule classes to take place at the office, assist the Defendant as she taught the classes to the attendee's, attend to client's needs and issues, and help prepare forms and documents for clients' cases. I would travel to the Court house to pick up extra self help divorce packages and child support packages for our customers. The Defendant Sophia Lacayo directed me through email that between the hours of 5 p.m. and 8 p.m. I was to work only at the front desk.

6. B Gloridelfa Barrios

12. In addition to my regular daily duties, Defendant Sofia Lacayo would often direct me to drive her to the doctor's office, marketing for the office, deposit company checks into the company account, and hand out advertising flyers and posters on the street.

13. I was not required to have any special skills and/or any special training or classes to obtain the position I had with Defendants.

14. Defendant Sophia Lacayo would go around, would pass through, observe, and supervise the quality of my work and supervise my work in general. Defendants provided me with a work email address and Defendant Sophia Lacayo would require me to email her, using my work email address, when I first arrived at work each morning and when left work each evening. I would often receive emails from Defendant Lacayo reviewing the quality of my work. Defendant Lacayo would discipline me by docking my pay or suspending me from work when she did not believe the quality of my work met her standards. Additionally Defendant Sofia Lacayo emailed me in my daily tasks or daily instructions either early in the morning or the previous evening.

15. During the relevant time period, Defendant, Sophia Lacayo, or Manager Thanya Lacayo provided me with my daily tasks each morning. Through out the day these tasks would constantly be changed or adjusted by Defendant, Sophia Lacayo, or Manager Thanya Lacayo, based on their needs each day.

16. At no time, throughout my employment with Defendants, did I have the authority to fire or hire any employees. Nor did I have the authority to set employee wages or write and/or disperse employee checks or any other administrative decisions. The only individuals with authority to hire or fire employees was Sophia Lacayo and sometimes Thanya Lacayo. If there were any disciplinary issues with regards to employees, Thanya Lacayo was in charge

 Gloridelfa Barrios

of those issues and I would witnesses Thanya Lacayo disciplining employees. Any decision that had to be made was required to be addressed first with Sophia Lacayo as the ultimate decision was up to Sophia Lacayo.

17. During the relevant time period I never trained employees; never set or adjusted their rates of pay and hours of work; never maintained production or sales records for use in supervision or control; never appraised employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; never handled employee complaints and grievances; never disciplined employees; never provided for the safety and security of the employees or the property; never planned or controlled the budget; and never monitored or implemented legal compliance measures.

18. During the relevant time period Defendant Sophia Lacayo or the manager Thanya Lacayo trained employees; Defendant Sophia Lacayo or the manager Thanya Lacayo set or adjusted their rates of pay and hours of work; Defendant Sophia Lacayo or the manager Thanya Lacayo maintained production or sales records for use in supervision or control; Defendant Sophia Lacayo or the manager Thanya Lacayo appraised employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; Defendant Sophia Lacayo or the manager Thanya Lacayo handled employee complaints and grievances; Defendant Sophia Lacayo or the manager Thanya Lacayo disciplined employees; Defendant Sophia Lacayo or the manager Thanya Lacayo provided for the safety and security of the employees or the property; Defendant Sophia Lacayo or the manager Thanya Lacayo planned or controlled the. budget; and Defendant Sophia Lacayo or the manager Thanya Lacayo never monitored or implemented legal compliance measures.

 Gloridelfa Barrios

19. During the relevant time period, I was not required to generate profit or loss through performance of managerial skills.

20. The work that I did as described above was for Defendants' business, and my tasks performed were central and integral in relation to their business. Defendants' business was involved in accounting, tax preparation and immigration documents, and my tasks were for the purpose of maximizing the value of Defendants' business through organizing and assisting Defendant Lacayo in any way she requested.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this 9 day of Dec, 2016 7

_____
AFFIANT
GLORIDELFA BARRIOS

The foregoing Affidavit was sworn to and subscribed before me, on this 9 day of Dec, 2016, by GLORIDELFA BARRIOS, who has produced FL DL # B620 ___ 724-0 as identification.

_____
NOTARY PUBLIC, State of Florida

<u>INTERPRETER'S ACKNOWLEDGEMENT</u>:

On DECEMBER 8, 2017 Marisabel Waller, personally known to me, affirmed that the foregoing was translated for GLORIDELFA BARRIOS and that he fully understood and affirmed the contents of the foregoing.



Gloridelfa Barrios

(Interpreter's signature)



K. DAVID KELLY
MY COMMISSION # FF 179242
EXPIRES: January 16, 2019
Bonded Thru Notary Public Underwriters

NOTARY PUBLIC / STAMP

Page 7 of 7

Gloridelfa Barrios